THE STATE OF OHIO, APPELLEE, *v.* PROCTER ET AL., APPELLANTS.

[Cite as State v. Procter (1977), 51 Ohio App. 2d 151.]

(Nos. 1055, 1056 and 1057—Decided March 16, 1977.)

*Mr. Christopher D. Stanley,* for appellants.
*Mr. Lynn Grimshaw,* for appellee.

STEPHENSON, J. This is an appeal from judgments of conviction entered by the Scioto County Court of Common Pleas, upon jury verdicts returned in a joint trial finding Johnny C. Procter, Donald Tucker and Wilborn Harrell, appellants herein, guilty of violating the escape statute, R. C. 2921.34(A), a fourth degree felony. Pursuant to

subdivision (C) of that statute, appellants were sentenced to a one to five year term to be served consecutively to their present sentence. Although appellants did not include in their brief, pursuant to App. R. 16(A)(2), formal assignments of error, it did include the following questions, which this court has numbered. They will be treated as assignments of error:

1. "Did jeopardy attach at the RIB hearing, thereby requiring the court to grant the motion to dismiss because a trial would violate the ban against double jeopardy?"

2. "Did the trial court err by not allowing defense counsel to personally question the jury panel?"

3. "Were the defendants entitled to a change of venue?"

4. "Did the trial court err by not instructing the jury on the law of duress?"

The record reflects that appellants were inmates of the Southern Ohio Correctional Facility, a maximum security penal institution of the state of Ohio. At trial, appellants did not contest the evidence of the state that they, and other inmates, had escaped from their place of confinement through a window and were outside of a penitentiary building, but inside the outer fence surrounding the institution, when apprehended. Nor did they contest the state's evidence that appellants were under lawful detention. Appellants conceded, in effect, they had escaped. Appellants, by their evidence, attempted to assert a defense of duress, which defense the court refused to submit to the jury. The facts which constituted the claimed duress are set forth under the fourth assignment of error.

The argument in support of the appellants' first assignment of error is that they had already been punished for the act of escape through administrative action by the rules infraction board of the Southern Ohio Correctional Facility and that any further court proceeding would violate their constitutional guarantee against double jeopardy. We hold such claim to be without merit both under the Ohio and United States Constitutions.

The applicability of Section 10, Article I, of the Ohio

Constitution is foreclosed for the reason that there must be prior *judicial* action. Legal jeopardy under the Ohio Constitution does not arise unless the former proceeding was in a court possessing *jurisdiction to try the charge.* *State* v. *Rose* (1914), 89 Ohio St. 383; *Crowley* v. *State* (1916), 94 Ohio St. 88. It follows that administrative punishment or discipline was not a bar. For other state courts reaching the same conclusion, see *State* v. *Tise* (Me. 1971), 283 A. 2d 666; *State* v. *Shoemaker* (1968), 273 N. C. 475, 160 S. E. 2d 281; *State* v. *Gonyer* (1960), 102 N. H. 527, 162 A. 2d 172; *State* v. *Lebo* (1971), 129 Vt. 449, 282 A. 2d 804; *State* v. *Williams* (1960), 57 Wash. 2d 231, 356 P. 2d 99; *State* v. *Maddox* (1973), 190 Neb. 361, 208 N. W. 2d 274; *State* v. *Williams* (1972), 208 Kan. 480, 493 P. 2d 258; *Shuman* v. *Nevada* (1974), 90 Nev. 227, 523 P. 2d 841.

The Fifth Amendment double jeopardy standards of the United States Constitution are now applicable to the states, via the Fourteenth Amendment. *Benton* v. *Maryland* (1969), 395 U. S. 784, *overruling Palko* v. *Conn.* (1937), 302 U. S. 319. The federal courts have consistently held that administrative discipline is not a bar to a prosecution for a criminal offense by reason of double jeopardy. *United States* v. *Apker* (C. A. 9, 1969), 419 F. 2d 388; *Mullican* v. *United States* (C. A. 5, 1958), 252 F. 2d 398; *Patterson* v. *United States* (C. A. 4, 1950), 183 F. 2d 327, *certiorari denied,* 340 U. S. 893; *Keaveny* v. *United States* (C. A. 5, 1969), 405 F. 2d 821.

Appellants cite *Breed* v. *Jonas* (1975), 421 U. S. 519, as authority to support their claim. We find it inapplicable. We note (1) that the initial hearing was a *court proceeding,* in juvenile court, and (2) the application of the double jeopardy provision therein was consistent with the prior decision of that court which, in effect, equated juvenile court proceedings with criminal prosecutions. Administrative penalties imposed upon a prisoner for escape are not proceedings "essentially criminal" to which the federal jeopardy protection applies.

Finally, we would note appellants reliance upon the decision of the Eighth District Court of Appeals, styled *In*

*re Lamb* (1973), 34 Ohio App. 2d 85. From our research, it stands alone in applying constitutional double jeopardy provisions to punishment imposed by prison authorities. To the extent that it is distinguishable, in that the court proceeding occurred first, we distinguish it; to the extent that it would make double jeopardy protections applicable, by reason of prison disciplinary proceedings, we decline to follow it. The first assignment of error is overruled.

In the second assignment of error, it is asserted that the trial court erred, after conducting the voir dire examination, in refusing to allow counsel for appellants to personally direct further inquiry to the prospective jurors. Crim. R. 24(A) provides the following:

"Examination of jurors. Any person called as a juror for the trial of any cause shall be examined under oath or upon affirmation as to his qualifications. The court may permit the attorney for the defendant, or the defendant if appearing pro se, and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination. *In the latter event, the court shall permit the state and defense to supplement the examination by further inquiry.*" (Emphasis added.)

The record discloses that prior to trial, the trial court, *sua sponte*, entered an order to the effect that the court would conduct the voir dire and that any general questions to the entire panel desired by appellants were required to be reduced to writing and filed. Particular questions to an individual juror by counsel, "if deemed appropriate by the court," would be allowed at the time of the jury interrogation. It appearing at the time of trial that counsel had not received the pre-trial order, the court allowed the oral submission of questions, some of which the court gave and some of which the court denied. Counsel was not allowed to personally address the jurors at any stage in the voir dire questioning. The opportunity was offered to counsel to propound additional questions after the general voir dire by the court. None was tendered, but an objection was again taken to the voir dire procedure.

**Prior to the adoption of the Criminal Rules, R. C. 2945.-**

27 provided that, after the examination of prospective jurors by the court, "he shall permit reasonable examination of such jurors by the prosecuting attorney and by defendant or his counsel." Under this statute the settled Ohio practice has always been to allow counsel the opportunity to personally examine prospective jurors. *State* v. *Anderson* (1972), 30 Ohio St. 2d 66. The question here is whether it was intended by Crim. R. 24(A) to allow the trial court to foreclose any personal inquiry of the jurors by counsel. The authorities outside Ohio, under their particular rule or statute, if any, are in conflict. See annotation, 73 A. L. R. 2d 1187.

We conclude that no such sweeping change was intended in the Ohio law by the rule for a number of reasons. The procedure adopted by the court is basically that utilized in federal criminal trials pursuant to Fed. R. Crim. P. 24, which provides, in part:

"(a) Examinations. The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry *as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."* (Emphasis added.)

Because of the specific authorization in the emphasized portion of the rule, most federal courts conduct the voir dire examination and allow counsel to only submit questions for further inquiry. See 26 F. R. D. 465, 466. Many states likewise permit voir dire examination solely by the court. *People* v. *Crowe* (1973), 8 Cal. 3d 815, 106 Cal. Rptr. 369, 506 P. 2d 193. Even so, we deem it significant that when Crim. R. 24(A) was adopted the emphasized portion of its counterpart, Fed. R. Crim. P. 24, was omitted. Had the federal procedure been intended to be adopted in Ohio, it would appear reasonable the phraseology of the federal rule would have been expressly included.

Further, a comparison of Civ. R. 47(A) and Crim. R. 24(A) discloses they are essentially similar and both provide, in substance, that if the court conducts the voir dire, further "supplemental inquiries by the parties" shall be permitted. One leading writer has stated, with respect to Civ. R. 47(A), that it was intended to continue the Ohio practice of allowing attorneys to ask questions rather than to adopt the federal procedure. McCormac, Ohio Civil Rules Practice 301, Section 12.12.

A number of courts in construing their rules or statutes to conform to federal procedure have noted with approval the A. B. A., Standards Relating To Trial By Jury 63, Section 2.4 (1968), which is essentially a voir dire examination by the trial judge alone with supplemental questions submitted to the judge by counsel. See *People* v. *Crowe, supra*. Significantly, it has now been proposed that the standard be revised to permit additional questioning personally by counsel. See A. B. A., *supra*, at 2. Finally, we note footnote 3 in *State* v. *Anderson, supra*, at 73, which considers the proposed Crim. R. 24(A). When read in context with the opinion, we interpret it to mean that *personal* supplemental inquiry by counsel must be allowed.

In light of the above, we hold the trial court erred in refusing to allow supplemental questions to be asked personally by counsel. The question remains if such error was prejudicial.

The voir dire inquiry by the court was detailed and included many of the questions counsel suggested. No claim is made here as to any particular area of questioning causing bias or prejudice, or that the procedure adopted prevented inquiry by appellants. Neither is it claimed that by such procedure any particular juror was left on the jury that was biased or unfair. Nor do we perceive, under the record, that it interferred with an intelligent exercise of pre-emptory challenges. Hence, we hold the error is not shown to be prejudicial and overrule the second assignment of error. *Crim. R. 52(A); State* v. *Ellis* (1918), 98 Ohio St. 21; *People* v. *Turner* (1975), 27 Ill. App. 3d 239, 326 N. E. 2d 425; *People* v. *Fleming* (1975), 36 Ill. App. 3d

612, 345 N. E. 2d 10; *People* v. *Adams* (1972), 21 Cal. App. 3d 972, 99 Cal. Rptr. 122.

We are not persuaded, under the third assignment of error, that appellants were prejudiced by the overruling of the motion for a change of venue. Appellants filed a pretrial motion for such change which was not ruled upon until after voir dire examination. The initial motion was conclusionary in form and was not supported then, or at the time of voir dire examination, by any evidence as to the nature, extent, duration and intensity of the news coverage from the institution. Hence, the case is distinguishable at the outset from *Sheppard* v. *Maxwell* (1966), 384 U. S. 333, where the scope and intensity of news coverage prior to and during trial was such that there was little likelihood of a fair and impartial trial.

The voir dire transcript reflects that the knowledge gained by prospective jurors from pre-trial publicity resulted in no fixed opinions as to guilt, and all the jurors finally selected indicated in the voir dire they could decide the case fairly and impartially upon the trial evidence. In *State* v. *Fairbanks* (1972), 32 Ohio St. 2d 34, 37, the following was stated:

"A change of venue rests largely in the discretion of the trial court, and there are numerous cases holding that appellate courts should not disturb the trial court's ruling on a motion for change of venue in a criminal case unless it is clearly shown that the trial court has abused its discretion. *State* v. *Laskey* (1968), 13 Ohio App. 2d 91, affirmed, 21 Ohio St. 2d 187; *State* v. *Tannyhill* (1956), 101 Ohio App. 466, appeal dismissed, 165 Ohio St. 482."

On the whole of the record, no abuse of discretion is shown and, therefore, the third assignment of error is overruled.

The fourth assignment of error is based upon the refusal to instruct the jury as to a defense based upon a claim of duress. The refusal to submit the duress defense is stated in an entry filed December 3, 1975, to be for the reasons (1) the evidence does not warrant such a charge and (2) "Section 2921.34(B) of the Revised Code prohibits such

defense in escape or attempt to escape cases." Section (B) provides, in part, the following:

"Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, is not a defense to a charge under this section if the detention is pursuant to judicial order or in a detention facility. * * *."

We must disagree with such a construction of the statute. The evident purpose of this section is to negate such decisions as *State* v. *Ferguson* (1955), 100 Ohio App. 191, which holds, in substance, that a prisoner has a right to escape if his confinement is unlawful. In precluding irregularities in bringing about or maintaining detention or lack of jurisdiction as a defense, the General Assembly intended that such matters were to be remedied by means other than self help through escape. We do not perceive, either expressly or by implication, a legislative intent therein to statutorily negate a duress defense.

Before considering the evidence upon the issue, the threshhold inquiry is whether such defense can exist at all for escape violations. Admittedly, we have been unable to find, and none has been cited, any Ohio authorities upon the question.

The defense of duress generally has long been recognized as a legitimate defense to all crimes, except the taking of the life of an innocent person. See annotation, 40 A. L. R. 2d 908. Likewise, it has been recognized in Ohio. *State* v. *Sappienza* (1911), 84 Ohio St. 63; *State* v. *Milam* (1959), 108 Ohio App. 254; *cf., State* v. *Good* (1960), 11 Ohio Op. 2d 459. For the defense to apply, it is required that the duress be present and eminent and of such a nature that there is a well grounded apprehension of death or serious bodily injury. It is not available as a defense if the accused had the opportunity to retreat to safety or the threat is of future, as opposed to present, injury. 21 American Jurisprudence 2d 180, Criminal Law, Section 100. See 4 O. J. I. 411.20 (Prov. 1974), which substantially embodies these requirements.

Within recent years, the utilization of the duress defense in escape offenses has received increasing judicial scrutiny. In 1975, the issue was presented to the Michi-

gan Supreme Court in *People* v. *Luther* (1975), 394 Mich.
619, 232 N. W. 2d 184. Michigan, like Ohio, does not statu-
torily incorporate a general duress defense into it's crimi-
nal law. In the *Luther* case, six unknown assailants had
made homosexual demands upon the defendant, who, upon
refusal, had been beaten, threatened with a knife and
chased. Unable to find an officer, the defendant escaped
and was apprehended nearby the next morning. The court
held that the defense was a jury issue. In a companion case,
under similar facts, it was held that the defense should
be submitted to the jury although the escape was twenty-
four hours after the confrontation. *People* v. *Harmon*
(1975), 394 Mich. 625, 232 N. W. 2d 187.

Other authorities holding the defense proper in escape
violations, either by any application of general statutory
duress (or similar) statutes, or by common law principles,
are *People* v. *Unger* (1975), 33 Ill. App. 3d 770, 338 N. E. 2d
442; *People* v. *Lovercamp* (1975), 43 Cal. App. 3d 823,
118 Cal. Rptr. 110; *Hill* v. *State* (1975), 135 Ga. App. 766,
219 S. E. 2d 18; *Pittman* v. *Commonwealth* (Ky. 1974), 512
S. W. 2d 488. For a more complete listing of authorities
considering the question and either accepting or rejecting
the defense under the particular facts of the case, see anno-
tation, 69 A. L. R. 3d 678. Under Section 5 of the annota-
tion, a number of authorites have, logically by our view,
limited the defense by a requirement that a prisoner be
required to surrender himself to the authorities as soon
as he has avoided the threatened harm. While we are not
unaware that escaped prisoners can tailor make reasons of
justification for an escape, we conclude, upon the reason-
ing of the above authorities, *under the proper facts*, the
defense is available for a violation of the Ohio escape
statute. Submission to a jury does not assure a jury's ac-
ceptance of the defense and acquittal, as the companion
cases arising from the mass escape, in which appellants
participated, attest.

Without detailing in full the evidence as to each ap-
pellant, in summary, there was evidence of a strike by the
correctional officers at the institution which substantially
reduced the guard force allowing the prisoners mobility to

areas of the prison normally restricted with decreased guard supervision. Some evidence of prisoner attacks generally was shown. Procter testified he had lost money gambling in a poker game and could not pay, had been struck by one of the participants and that believing such participant and his associates would return to attack him, he attempted to find a guard to place himself in protective custody, and, finding none, felt he had to escape to avoid being killed. Tucker claimed five inmates came to his cell and threatened to kill him if he did not submit to homosexual acts and he had asked them to come back later and he, also, was unable to find a guard to place himself in protective custody. Harrell, through his evidence, he personally not testifying, claimed he was threatened with death by another inmate shortly before the escape, and the inmate who made the threat so testified.

The record reflects appellants had filed a request, in writing, for special instructions pursuant to Crim. R. 30. The instructions sought were substantially the requirement for a duress defense set forth in *People* v. *Lovercamp, supra.* This was refused. At the conclusion of the charge, and before the retirement of the jury, an objection was entered as to the failure to include a duress defense. By the above, the question was sufficiently saved for review. While the court was not required to give the tendered special instructions in that form, we have concluded that, under the evidence, a duress instruction should have been given and its refusal constitutes prejudicial error. In so holding, we deem it significant that the four other trial judges participating in this series of cases involving other inmates who escaped at the same time as appellants, upon facts similar to the instant case, all submitted the duress defense to the jury.

The fourth assignment of error is sustained, the judgments are reversed and the causes are demanded to the trial court for a new trial.

*Judgments reversed and causes remanded.*

ABELE, P. J., concurs.