The STATE of Ohio, Appellee,

v.

VASQUEZ, Appellant.

[Cite as *State v. Vasquez* (1997), 122 Ohio App.3d 692.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA97–01–006.

Decided Aug. 25, 1997.

*Timothy A. Oliver*, Warren County Prosecuting Attorney, and *Rachel A. Hutzel*, Assistant Prosecuting Attorney, for appellee.

*Allen & Crossley* and *Mitchell W. Allen*, for appellant.

---

WALSH, Judge.

Defendant-appellant Samuel Vasquez appeals from his conviction for aggravated trafficking in drugs in violation of R.C. 2925.03(A)(4).[1]

In 1995, appellant was an inmate at the Lebanon Correctional Institution ("LCI") in Warren County, Ohio. After drugs and contraband were discovered in his cell at the LCI, disciplinary charges were filed against appellant on December 1, 1995. Appellant was charged with violating prison regulations that prohibited possession of intoxicating substances. On December 8, 1995, a hearing was held before the Rules Infraction Board ("RIB") and appellant pled guilty to the charges. After finding that his presence in the general population was likely to seriously disrupt the orderly operation of the LCI, appellant was ordered to serve fifteen days in disciplinary control (solitary confinement).

On June 3, 1996, appellant was indicted by a Warren County Grand Jury for aggravated trafficking in drugs with an R.C. 2941.143 specification for a prior violent offense conviction. As a result of plea negotiations, appellant agreed to plead guilty to aggravated trafficking in drugs, and the state agreed to dismiss the specification. On December 16, 1996, the trial court accepted appellant's guilty plea and sentenced him to a term of two years' imprisonment, to be served consecutively with the sentence that he was currently serving at the LCI.

---

1. On July 1, 1996, R.C. 2925.03 was amended. However, since appellant's offense was committed prior to July 1, 1996, he was convicted and sentenced under the former version of R.C. 2925.03.

On appeal, appellant raises a single assignment of error:

"The trial court erred in convicting and sentencing defendant–appellant when such conviction imposes multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Ohio and United States Constitutions."

The Double Jeopardy Clauses of the Ohio and United States Constitutions [2] prohibit subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense. *United States v. Dixon* (1993), 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556; *State v. Gustafson* (1996), 76 Ohio St.3d 425, 441, 668 N.E.2d 435, 447. Relying primarily on the rationale of the United States Supreme Court decision in *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487, appellant argues that the disciplinary action taken by the prison officials constituted "punishment" for double jeopardy purposes. Thus, appellant asserts that subsequent criminal punishment for the same conduct is precluded by the constitutional prohibition against double jeopardy.

"Prior to the decision of the United States Supreme Court in *Halper*, courts uniformly accepted the principle that sanctions imposed pursuant to 'civil' or 'administrative' proceedings did not 'trigger' the Double Jeopardy Clause so as to preclude either subsequent criminal prosecutions or criminal punishments." *Gustafson*, 76 Ohio St.3d at 432, 668 N.E.2d at 441, citing *Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 921–922; *United States v. Ward* (1980), 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749. Accordingly, Ohio courts recognized that disciplinary action which was administratively imposed by prison officials did not "trigger" double jeopardy and bar the subsequent prosecution of a defendant for a criminal offense arising out of the same conduct. *State v. Keller* (1976), 52 Ohio App.2d 217, 6 O.O.3d 235, 369 N.E.2d 798; *State v. Procter* (1977), 51 Ohio App.2d 151, 5 O.O.3d 309, 367 N.E.2d 908; but, see, *In re Lamb* (1973), 34 Ohio App.2d 85, 63 O.O.2d 153, 296 N.E.2d 280 (holding that double jeopardy precluded disciplinary action by prison officials where inmate had already been criminally prosecuted and punished for the same conduct).

In *Halper*, the United States Supreme Court recognized that civil penalties may cross a line and constitute "punishment" for double jeopardy purposes. The Supreme Court held that "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction

---

**2.** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "no person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb." Section 10, Article I of the Ohio Constitution similarly provides that "no person shall be twice put in jeopardy for the same offense."

in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501. Accordingly, the court held that a civil penalty constitutes "punishment" for double jeopardy purposes where it "may not fairly be characterized as remedial, but only as a deterrent or retribution." *Halper* at 448–450, 109 S.Ct. at 1902, 104 L.Ed.2d at 501–503. The court concluded that civil penalties would be found to constitute "punishment" only in the "rare case" where the civil penalty was "overwhelmingly disproportionate" to the damage caused. *Id.* See, also, *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (holding that civil taxes can constitute punishment for double jeopardy purposes).

Since *Halper* considered the issue of whether a civil penalty may constitute "punishment" for double jeopardy purposes, we recognize that it is not directly on point with the present case. However, the Ohio Supreme Court adopted the approach taken in *Halper* to determine whether administrative license suspensions constituted "punishment" for double jeopardy purposes. See *Gustafson,* 76 Ohio St.3d at 439–440, 668 N.E.2d at 446. Further, *Halper* has been utilized in analyzing whether penalties imposed by prison officials constitute "punishment" for double jeopardy purposes. See *United States v. Hernandez–Fundora* (C.A.2, 1995), 58 F.3d 802; *United States v. Newby* (C.A.3, 1993), 11 F.3d 1143, certiorari denied (1994), 513 U.S. 834, 115 S.Ct. 111, 130 L.Ed.2d 58. Therefore, we find that *Halper* provides guidance in determining whether the administrative penalties imposed by the prison officials constitute a first "punishment" for double jeopardy purposes so as to preclude appellant's subsequent criminal punishment.

Punitive and remedial interests are "tightly intertwined" in the prison context, where the government's remedial interest is to maintain order and discipline among a population of criminals. *Hernandez–Fundora* at 806; *United States v. Newby* at 1146. Thus, even though disciplinary action taken by prison officials may have a punitive component, the action does not necessarily constitute "punishment" for double jeopardy purposes. *Hernandez–Fundora* at 806. Rather, disciplinary action taken by prison officials constitutes "punishment" for double jeopardy purposes only in the exceedingly rare case where the disciplinary penalty imposed is grossly disproportionate to the remedial goal of maintaining order and discipline in the prison. *Hernandez–Fundora* at 807; *Newby* at 1146.

In deciding what is needed to preserve order and discipline, a court should generally defer to the expertise of the prison officials. *Newby* at 1146. See, also, *Bell v. Wolfish* (1979), 441 U.S. 520, 548, 99 S.Ct. 1861, 1878–1879, 60 L.Ed.2d 447, 474. The position asserted by appellant would seriously hinder the ability of prison officials to use their expertise to maintain order and discipline in our prisons. While officials would be able to promptly address violations of prison regulations that did not rise to the level of criminal behavior, officials

would not be able to address more heinous behavior without sacrificing subsequent criminal prosecution and punishment. *Hernandez–Fundora* at 807; *Newby* at 1146. Further, criminal prosecution and punishment would be inadequate to maintain prison order and discipline due to the difficulties and delays that are often associated with a criminal prosecution. See *Newby* at 1146.

A review of the record reveals that after marijuana, LSD, heroin, "hooch,"[3] a hypodermic needle, and $120 in cash were discovered in appellant's cell, he pled guilty to violating prison regulations. On December 8, 1995, the RIB issued a decision that ordered appellant to serve fifteen days in disciplinary control "for the safety and security of the institution." In light of the substantial drugs and the additional fact that the hootch, $120 cash, and hypodermic needle could not be included in the controlled substances considered in the aggravated trafficking offense, the disciplinary action taken by the prison officials was not grossly disproportionate to the remedial goal of maintaining order and discipline at the LCI. Therefore, the disciplinary action did not constitute "punishment" for double jeopardy purposes so as to preclude subsequent criminal prosecution and punishment. Accordingly, appellant's sole assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and KOEHLER, J., concur.

---

3. Webster's defines "hooch" as "alcoholic liquor especially when inferior, obtained illicitly or made surreptitiously." Webster's Third New International Dictionary.(1993) 1087.