**The STATE of Ohio, Appellee,**

v.

**THOMPSON, Appellant.**

[Cite as *State v. Thompson* (1999), 132 Ohio App.3d 755.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 98CA2600.

Decided March 15, 1999.

*Pat Apel,* for appellant.

*Lynn Alan Grimshaw,* Scioto County Prosecuting Attorney, and *R. Randolph Rumble,* Assistant Prosecuting Attorney, for appellee.

HARSHA, Judge.

Ray Thompson, Jr. appeals his conviction for violating R.C. 2921.38(A), harassment by inmate, and assigns the following error:

"The trial court erred in denying appellant's motion to dismiss for former jeopardy."

At the time of the incident underlying his conviction, appellant was an inmate at the Southern Ohio Correctional Facility ("SOCF"). A nurse employed by SOCF filed a conduct report alleging that appellant threw a styrofoam cup full of feces at her, hitting her in the hair, face, arms, chest and left leg and ruining the medication that she was distributing to other inmates. A hearing officer determined that there was probable cause to believe that Class II, Rules 15 and 19 were violated.[1] The hearing officer's report indicates that appellant pled guilty to the rules violations and referred the matter to the Rules Infraction Board ("RIB"). At the RIB proceeding, appellant was informed of the right to be heard in his defense. However, no witnesses testified at the proceeding. Appellant was found guilty and was given fifteen days in disciplinary control, required to reimburse SOCF for the medicines he had destroyed, and ordered to reimburse SOCF for the cost of an HIV test performed on appellant. The managing officer of SOCF modified the RIB's disposition by excluding the reimbursement for the medicines he had destroyed.

---

1. A Class II, Rule 15 violation is "Malicious destruction, alteration, or misuse of property." Ohio Adm.Code 5120–9–06. A Class II, Rule 19 violation is "[a]ny act that is a felony or misdemeanor as defined by any Ohio or federal law." *Id.,* in this instance, assault.

After the proceedings at SOCF, appellant was indicted on two counts of harassment by an inmate, a violation of R.C. 2921.38(A). When the trial court overruled appellant's motion to dismiss on grounds of former jeopardy, appellant pled no contest to one count. The trial court found him guilty and sentenced him to nine months, to be served consecutively to his current sentence.

In his only assignment of error, appellant argues that the disciplinary proceedings at SOCF were a criminal penalty, thus precluding the state from charging him a second time under the principles of double jeopardy.

■ We review a trial court's double jeopardy analysis as a mixed question of law and fact. That is, we accord due deference to the trial court's findings of fact, but independently review the trial court's application of the law to the facts. *State v. Duncan* (Nov. 30, 1998), Licking App. No. 97CA134, unreported, 1999 WL 3965. See, also, *Garrity v. Fiedler* (C.A.7, 1994), 41 F.3d 1150, 1151.

■ The Double Jeopardy Clause of the United States Constitution protects against three types of violations: (1) prosecuting a defendant again for the same conduct after an acquittal, (2) prosecuting a defendant for the same crime after conviction, and (3) subjecting a defendant to multiple criminal punishments for the same conduct. *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496–497; *State v. Gustafson* (1996), 76 Ohio St.3d 425, 432, 668 N.E.2d 435, 441. Appellant argues that the appellee violated the third prong by placing him in disciplinary control for fifteen days and then sentencing him to nine months in prison for the same conduct.

We have previously determined that administrative sanctions of an inmate by prison authorities do not bar a criminal prosecution for the same conduct by reason of double jeopardy protections. See, *e.g.*, *State v. Procter* (1977), 51 Ohio App.2d 151, 5 O.O.3d 309, 367 N.E.2d 908; *State v. Rembert* (May 16, 1980), Ross App. No. 747, unreported, 1980 WL 233318. Appellant essentially asks us to reconsider these cases in light of the passage of time, expansion of due process principles, and *Hudson v. United States* (1997), 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450. In *Hudson*, the United States Supreme Court reaffirmed the double jeopardy analysis of *United States v. Ward* (1980), 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742, while discarding the test used in *Halper, supra.*

■ The Double Jeopardy Clause protects only against the imposition of multiple *criminal* punishments for the same conduct. *Hudson* citing *Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 921–922. Thus, we must determine whether the proceedings against appellant at SOCF were criminal or civil in nature. This is initially a question of statutory construction, *i.e.*, whether the General Assembly intended the disciplinary control of inmates to be criminal or civil in nature. See *Hudson* at 99–100, 118 S.Ct. at

493–494, 139 L.Ed.2d at 459, citing *Ward* at 248, 100 S.Ct. at 2641, 65 L.Ed.2d at 749.

R.C. 5120.16 places the control, care, and custody of inmates in any Department of Rehabilitation and Correction ("DRC") institution under the control of DRC. The Director of DRC has the power to prescribe rules to carry out the duties of the DRC. R.C. 5120.01. Ohio Adm.Code 5120–9–06 sets forth the rules of conduct for inmates under DRC control and Ohio Adm.Code 5120–9–07 sets forth the penalties for breaking the rules of conduct.

■ Conferring authority to punish upon an administrative agency is *prima facie* evidence that the General Assembly intended the punishments imposed by RIB's in Ohio's penal institutions to be civil in nature. Cf. *Hudson, supra* (conferring authority to debar bankers and impose monetary fines upon federal banking agencies is *prima facie* proof of Congress' intent to provide for civil, rather than criminal, sanctions). See, also, *Wong Wing v. United States* (1896), 163 U.S. 228, 235, 16 S.Ct. 977, 980, 41 L.Ed. 140, 142–143 (quintessential criminal punishments may be imposed only "by a judicial trial").

■■ Turning to the second stage of the *Ward* test, we must decide whether the regulatory scheme is so punitive in effect that regardless of the legislature's intent to provide a civil punishment, the result is a criminal penalty. *Hudson* at 99–100, 118 S.Ct. at 493–494, 139 L.Ed.2d at 459. Only the "clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Id.*, citing *Ward* at 249, 100 S.Ct. at 2641, 65 L.Ed.2d at 749–750. Furthermore, the *Hudson* court suggested that the factors considered in *Kennedy v. Mendoza–Martinez* (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, serve as "useful guideposts" in this analysis. The *Kennedy* factors are:

(1) "[w]hether the sanction involves an affirmative disability or restraint";

(2) "whether it has historically been regarded as punishment";

(3) "whether it comes into play only on a finding of scienter";

(4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence";

(5) "whether the behavior to which it applies is already a crime";

(6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and

(7) "whether it appears excessive in relation to the alternative purpose assigned." 372 U.S. at 168–169, 83 S.Ct. at 567–568, 9 L.Ed.2d at 644. See, also, *Hudson, supra.*

Thus, we will consider each of these factors in turn.

First, because appellant was already affirmatively "restricted" by virtue of being incarcerated prior to the administrative sanction at issue, the additional restraint suffered by appellant has minimal impact on our decision. Second, disciplinary proceedings against prisoners have historically not been regarded as criminal punishment. See *Garrity, supra; United States v. Rising* (C.A.10, 1989), 867 F.2d 1255, 1259; *United States v. Stuckey* (C.A.3, 1971), 441 F.2d 1104; *Gibson v. United States* (C.A.6, 1947), 161 F.2d 973, 974; *Procter, supra; Rembert, supra*. Third, the rules appellant was found guilty of violating require a finding of "malicious destruction * * * of property" and "intent to harass,"[2] thus, we acknowledge there is a requirement of scienter. Fourth, "[p]unitive and remedial interests are 'tightly intertwined' in the prison context, where the government's remedial interest is to maintain order and discipline among a population of criminals." *State v. Vasquez* (1997), 122 Ohio App.3d 692, 695, 702 N.E.2d 923, 925, citing *United States v. Hernandez–Fundora* (C.A.2, 1995), 58 F.3d 802, 806. Further, by definition, Class II rules "include those rules whose violation constitutes an immediate and direct threat to the security of the institution * * *." Ohio Adm.Code 5120–9–06. Thus, the proceedings at SOCF promote the maintenance of order and discipline among the criminals at SOCF. Fifth, we also acknowledge that a Class II, Rule 19 violation is already a crime by definition. See Ohio Adm.Code 5120–9–06. Sixth, the purpose of maintaining order and discipline can be assigned to the proceedings at SOCF. Seventh, fifteen days of a loss of privileges for appellant's conduct in relation to SOCF"s need to maintain order and discipline are not excessive. In deciding what is needed to preserve order and discipline, a court should generally defer to the expertise of prison officials. *Vasquez, supra,* citing *United States v. Newby* (C.A.3, 1993), 11 F.3d 1143.

■ Taking into account all of the *Kennedy* factors, the proceedings of SOCF were not criminal in nature and, thus, the subsequent prosecution did not violate the Double Jeopardy Clause. As the Eleventh Circuit noted in *United States v. Mayes* (C.A.11, 1998), 158 F.3d 1215, 1223–1224:

"Prison discipline cases do not fit neatly into the matrix of double jeopardy doctrine. This is because, in the prison context, virtually any form of sanction seems 'criminal' and 'punitive' as we commonly understand those terms. With that in mind, we recognize that many of the *Kennedy* factors may weigh in the appellants' favor and support their argument that the disciplinary regulations constitute criminal punishment for double jeopardy purposes.

---

2. Rules 15 and 19, respectively. See Ohio Adm.Code 5120–9–06.

"* * *

█ "We have some flexibility in determining the extent that we choose to utilize the considerations enunciated in *Kennedy* for purposes of our double jeopardy analysis. * * * We therefore exercise our discretion to attribute less significance to *Kennedy's* list of consideration in this particular case, primarily because it arises in the prison context. In this unique setting, we must take into account the fact that a prison's remedial and punitive interests are inextricably related. As the Second Circuit observed, '[p]unitive interest and remedial interest are nowhere so "tightly intertwined" as in the prison setting, where the government's remedial interest is to maintain order among a population of criminals' and where 'remedial concerns require "punishing" individuals for violent or other disruptive conduct.'" *United States v. Hernandez–Fundora.*

We also agree with the Third Circuit's view:

"We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison discipline * * *. If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities will be forced to choose between instituting a disciplinary proceeding or awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time. The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline." *Newby,* 11 F.3d at 1146.

Under these circumstances, we decline to classify the regulations as "criminal" for the same reasons the Eleventh Circuit did in *Mayes:*

█ "[W]e cannot conclude that the regulations authorizing the prison disciplinary sanctions imposed against these appellants are so punitive as to override the government's intent to create remedial administrative penalties for inmate misconduct." *Mayes,* 158 F.3d at 1224.

Accordingly, we overrule appellant's only assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

KLINE, P.J., and PETER B. ABELE, J., concur.