DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. The jury found Curtis Walton, defendant below and appellant herein, guilty of assault, in violation of R.C. 2903.13.[1]
 {¶ 2} Appellant raises the following assignments of error:
First assignment of error:
"The trial court erred by not instructing the jury on the lesser included offense of the original offense charged."
Second assignment of error:
"Appellant's confiction was in violation of his constitutional right against double jeopardy and is therefore void when appellant had already been sanctioned by the Ohio Department of Corrections for the same offense."
Third assignment of error:
"Appellant's conviction was in violation of his right to effective assistance of counsel."
Fourth assignment of error:
"Appellant's conviction was against the manifest weight of the evidence."
 {¶ 3} On July 3, 2001, at approximately 5:00 p.m., Ross Correctional Institution Corrections Counselor Sergeant Rodney Anderson observed an inmate, Larry Rice, walking back and forth along a walkway. Sergeant Anderson found Rice's behavior odd because inmates are not supposed to loiter. Sergeant Anderson thus decided to question Rice.
 {¶ 4} Sergeant Anderson asked Rice to accompany him to his office. Once inside Sergeant Anderson's office, the sergeant locked the door and sat behind his desk. When Sergeant Anderson asked Rice what he had been doing Rice became argumentative. Because Rice did not cooperate, Sergeant Anderson asked him to place his hands on the wall. Rice refused and Sergeant Anderson reached to grab Rice's left arm. At that point, Rice "reached and grabbed" the sergeant by his shirt, pulled the sergeant "up in his face and started screaming, `Don't put your hands on me. Don't you ever fucking put your hands on me.'" Rice then began to "jerk" Sergeant Anderson "all about." Anderson could not subdue him and Anderson hit his personal alarm to signal other officers that he needed help.
 {¶ 5} Sergeant Anderson and Rice continued to struggle. Anderson told Rice to put his hands on the wall, but Rice continued jerking him back and forth. Somehow, Anderson opened the door and another inmate, Curtis Walton, entered the room. Rice and Sergeant Anderson fell to the floor and continued to struggle. Rice struck Sergeant Anderson twice in the face. As Sergeant Anderson tried to get away, Walton started hitting him from behind in the back of the head. Walton continued to punch Anderson, pull his hair, and "beat his face. [Walton] started screaming, `I'll kill you, bitch. I'll kill you, Bitch. You don't never mess with one of mine.'"
 {¶ 6} Sergeant Anderson became unconscious. When he awoke, officers yelled at him to open the door. An emergency squad arrived and took Sergeant Anderson to the hospital. He exhibited black eyes, bruises on his face, a cut on his left shin, and missing hair.
 {¶ 7} On September 27, 2002, the Ross County Grand Jury returned an indictment charging appellant with assault, in violation of R.C. 2903.13.
 {¶ 8} On March 17 and 18, 2003, the court held a jury trial. At trial, Sergeant Anderson testified that Rice hit him in the face and that Walton also punched him in the face. Some of the officers who witnessed the incident through a window in the door also testified that they observed Walton hitting Sergeant Anderson and the struggle between Sergeant Anderson and Rice.
 {¶ 9} The jury subsequently found appellant guilty, and on April 24, 2003, the trial court sentenced appellant to twelve months imprisonment, to be served consecutively to the sentence he already was serving.[2] Appellant filed a timely notice of appeal.
 I {¶ 10} In his first assignment of error, appellant asserts that the trial court erred by not instructing the jury on the lesser included offense of disorderly conduct. We disagree with appellant.
 {¶ 11} We initially note that appellant's trial counsel did not request the trial court to give a lesser included offense instruction. Thus, appellant did not properly preserve the argument for appellate review and we may only reverse the trial court's judgment if the failure to give the lesser included offense instruction amounts to plain error. See Crim.R. 52; State v. Hartman (2001), 93 Ohio St.3d 274, 294,754 N.E.2d 1150; State v. Ballew (1996), 76 Ohio St.3d 244, 254,667 N.E.2d 369. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See, e.g., State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240; State v. Hill (2001),92 Ohio St.3d 191, 196, 749 N.E.2d 274. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. See, e.g., State v. Jackson (2001),92 Ohio St.3d 436, 438, 751 N.E.2d 946; State v. Sanders (2001),92 Ohio St.3d 245, 263, 750 N.E.2d 90. In the case at bar, we do not believe that the trial court erred, plainly or otherwise, by not instructing the jury on the lesser included offense instruction.
 {¶ 12} To determine whether a trial court must instruct the jury on a lesser included offense, a court first must examine whether the offense truly is a lesser included offense of the crime with which the defendant stands charged.
"[A] criminal offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense."
State v. Barnes (2002), 94 Ohio St.3d 21, 25-26, 759 N.E.2d 1240
(citing State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus).
 {¶ 13} In the case sub judice, after we compare the elements of the crime with which appellant was charged, assault, to the offense appellant claims is a lesser included offense, disorderly conduct, we agree that disorderly conduct can be a lesser included offense of assault. See, e.g., State v. Ault (Aug. 31, 2000), Athens App. No. 99CA56; State v.Reider (Aug. 3, 2000), Cuyahoga App. No. 76649; State v. Reynolds
(1985), 25 Ohio App.3d 59, 61, 495 N.E.2d 971. However, simply because an offense is a lesser included offense of the crime with which a defendant stands charged does not automatically require the trial court to give the lesser included offense instruction. See State v. Thomas (1988),40 Ohio St.3d 213, 216, 533 N.E.2d 286. Rather, a trial court must instruct a jury regarding a lesser included offense only when the evidence presented at trial reasonably supports the instruction. Id. In other words, a trial court must charge the jury on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Id. Moreover, in determining whether the evidence reasonably supports the lesser included offense instruction, "[t]he persuasiveness of the evidence regarding the lesser included offense is irrelevant." State v. Wilkins (1980), 64 Ohio St.2d 382, 388,415 N.E.2d 303. Instead, the trial court must give the lesser included offense instruction, "[i]f under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." Id. An instruction is not warranted, however, every time "some evidence" is presented on a lesser included offense. See State v. Shane (1992), 63 Ohio St.3d 630,632-33, 590 N.E.2d 272.
"To require an instruction * * * every time `some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense."
Id. at 633; see, also, State v. Wright (Mar. 26, 2002), Scioto App. No. 01CA2781.
 {¶ 14} After our review of the evidence in the case sub judice, we do not believe that the trial court should have instructed the jury on the lesser included offense of disorderly conduct. The evidence presented at trial does not reasonably support both an acquittal on assault and a conviction upon disorderly conduct.
 {¶ 15} One is guilty of assault when one knowingly causes physical harm to another. See R.C. 2903.13(A). Disorderly conduct occurs when a person recklessly causes inconvenience, annoyance or alarm by, inter alia, engaging in fighting, violent, or turbulent behavior or by creating a condition that is physically offensive or presents a risk of physical harm. See R.C. 2917.11(A)(1) (5).
 {¶ 16} In the case at bar, the evidence reveals that appellant did more than engage in fighting behavior that caused "inconvenience, annoyance or alarm" or that created a condition that is physically offensive or that presents a risk of physical harm. Sergeant Anderson testified that appellant struck him in the head and face. As a result of this incident, Sergeant Anderson suffered significant physical harm. We do not believe that the jury, presented with this evidence, would have found appellant not guilty of assault but guilty of disorderly conduct.
 {¶ 17} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 18} In his second assignment of error, appellant argues that his conviction for assault violates the Double Jeopardy Clause. Appellant contends that because the Ohio Department of Corrections sanctioned him for the offense that he committed while an inmate, the state may not prosecute him for that same offense. We disagree.
 {¶ 19} "[D]ouble jeopardy principles do not prohibit the imposition of every additional sanction that could be labeled `punishment' in common parlance." State v. Martello (2002), 97 Ohio St.3d 398, 402, 780 N.E.2d 250. Instead, "double jeopardy principles protect `only against the imposition of multiple criminal punishments for the same offense * * * and then only when such occurs in successive proceedings.'" Id. (quoting Hudson v.United States (1997), 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450). The Martello court approved of a two-part test to determine whether a particular penalty is a "criminal punishment" for double jeopardy purposes:
"Under this test, the first question to be answered is `whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."'Hudson, 522 U.S. at 99, 118 S.Ct. 488, 139 L.Ed.2d 450, quoting Ward,448 U.S. at 248, 100 S.Ct. 2636, 65 L.Ed.2d 742. Second, even in those cases where the legislature has indicated an intention to establish a civil penalty, the United States Supreme Court has inquired further whether the statutory scheme was so punitive in purpose or effect as to transform what was clearly intended to be a civil remedy into a criminal penalty.Hudson, 522 U.S. at 99, 118 S.Ct. 488, 139 L.Ed.2d 450; State v. Uskert
(1999), 85 Ohio St.3d 593, 597, 709 N.E.2d 1200."
Id. at 402-03.
 {¶ 20} In State v. Thompson (1999), 132 Ohio App.3d 755, 759,726 N.E.2d 530, we employed the above test and concluded that an administrative punishment imposed within the prison setting and a subsequent criminal prosecution for the offense giving rise to the administrative sanction does not violate the Double Jeopardy Clause. We noted that "disciplinary proceedings against prisoners have historically not been regarded as criminal punishment." Id. at 760.
 {¶ 21} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 22} In his third assignment of error, appellant contends that he received ineffective assistance of counsel. In particular, appellant asserts that counsel was ineffective (1) for failing to present evidence of the victim's alleged pattern of racially motivated acts against African-Americans; and (2) for not objecting to the lack of African-Americans in the jury pool or the empaneled jurors. Appellant complains that trial counsel should have argued that the jury selection process deprived him of his right to have a jury chosen from a fair cross-section of the community because a large percentage of African-Americans are not registered to vote.
 {¶ 23} In order to reverse a conviction on ineffective assistance of counsel grounds, a defendant must show (1) that his counsel's performance was deficient, and (2) that such deficient performance prejudiced the defense so as to deprive him of a fair trial. SeeStrickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904;State v. Goff (1998), 82 Ohio St.3d 123, 139, 694 N.E.2d 916. Both prongs of this test need not be analyzed if a claim can be resolved under only one of them. See State v. Madrigal (2000), 87 Ohio St.3d 378, 389,721 N.E.2d 52; State v. Loza (1994), 71 Ohio St.3d 61, 83, 641 N.E.2d 1082.
 {¶ 24} First, with respect to appellant's claim that counsel rendered ineffective assistance of trial counsel for failing to present evidence of the victim's alleged prior instances of violence against African-Americans, we note that the claim is based upon matters outside the record. It is well-established that in a direct appeal, a reviewing court may consider only what is contained in the trial court record. See, e.g., State v. Ishmail (1976), 54 Ohio St.2d 402, 377 N.E.2d 500, syllabus. See, also, State v. Hartman (2001), 93 Ohio St.3d 274, 299,754 N.E.2d 1150 (explaining that if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal). Thus, we cannot evaluate appellant's claim that counsel rendered ineffective assistance of counsel for failing to present evidence of the victim's alleged prior instances of violence against African-Americans.
 {¶ 25} Second, we disagree with appellant that counsel rendered ineffective assistance of counsel for failing to object to the jury pool or the empaneled jury. In State v. Jones (2001), 91 Ohio St.3d 335,339-40, 744 N.E.2d 1163, the court discussed the requirement of a jury composed of a cross-section of the community as follows:
"`[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial.' Taylor v. Louisiana (1975), 419 U.S. 522, 528,95 S.Ct. 692, 697, 42 L.Ed.2d 690, 697. However, the Sixth Amendment does not require that petit juries `mirror the community and reflect the various distinctive groups in the population.' Id. at 538,95 S.Ct. at 702, 42 L.E.2d at 703. Under the Sixth Amendment, `[d]efendants are not entitled to a jury of any particular composition, * * * but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.' Id.
 {¶ 26} In Duren v. Missouri (1979), 439 U.S. 357, 99 S.Ct. 664,58 L.Ed.2d 579, the United States Supreme Court held that in order to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must demonstrate `(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury-selection process.' Id. at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 587. Accord State v. Fulton (1991),57 Ohio St.3d 120, 566 N.E.2d 1195, paragraph two of the syllabus."
 {¶ 27} In the case sub judice, appellant has satisfied the first prong of the Duren analysis. "For purposes of the fair cross-section analysis, African-Americans are a distinctive group." Jones (citingUnited States v. Buchanan (C.A. 6, 2000), 213 F.3d 302, 310; UnitedStates v. Rioux (C.A. 2, 1996), 97 F.3d 648, 654).
 {¶ 28} Appellant has not, however, established the second or third prongs of the Duren analysis. The second element requires the defendant to "demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." Duren, 439 U.S. at 364. Appellant has not presented any evidence as to the percentage of African-Americans in the community. Under the third prong, the defendant must produce evidence that African-Americans are systematically excluded. "[U]nderrepresentation on a single venire is not systematic exclusion." State v. McNeill (1998), 83 Ohio St.3d 438, 444,700 N.E.2d 596. Appellant has not produced any evidence showing that African-Americans are systematically excluded. Instead, he relies upon his claim that a large percentage of African-Americans are not registered to vote.
 {¶ 29} Appellant's arguments are similar to those rejected inJones:
 {¶ 30} "With respect to the second prong, for example, appellant has come forward with no evidence to suggest that African-Americans in Ashtabula County are unfairly represented in venires in relation to their number in the community. He merely alleges that African-Americans were not adequately represented on his particular venire and jury.
Even if the appellant's venire was underrepresentative, the appellant has not presented any evidence of `systematic exclusion' as required under the third prong of Duren. Appellant must do more than show that his particular panel was unrepresentative. Where, as here, the trial court relies upon voter registration lists, the defendant-appellant "must demonstrate that the voter-registration qualifications are suspect, or that the jury-selection procedure is administered in a discriminatory manner." United States v. Ireland (C.A. 8, 1995), 62 F.3d 227, 231. There is nothing inherently unconstitutional about using voter-registration rolls as exclusive sources for jury selection. [State v. Moore (1998),81 Ohio St.3d 22, 28, 689 N.E.2d 1]. Because appellant has failed to demonstrate systematic discrimination, we reject his Sixth Amendment claim."
State v. Jones (2001), 91 Ohio St.3d 335, 339-41, 744 N.E.2d 1163.
 {¶ 31} In the case at bar, appellant, like the Jones defendant, has not presented any evidence to demonstrate his claim that the jury failed to represent a cross-section of the community. Instead, he relies upon conclusory allegations.
 {¶ 32} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV {¶ 33} In his fourth assignment of error, appellant asserts that the his conviction is against the manifest weight of the evidence.
 {¶ 34} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and consider the credibility of witnesses, while bearing in mind that credibility generally is an issue for the trier of fact to resolve. See Issa,93 Ohio St.3d at 67; State v. Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356;State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins,78 Ohio St.3d at 387 (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 35} In the case at bar, the jury convicted appellant of assault, in violation of R.C. 2903.13. The statute defines assault as knowingly causing or attempting to cause physical harm to another. In the instant case, we believe that the prosecution presented substantial evidence from which the jury could have concluded that the essential elements of assault had been established. The evidence reveals that appellant struck Sergeant Anderson. Sergeant Anderson testified that appellant struck him in the face and in the back of the head. The evidence does not show, as appellant suggests, that he simply grabbed and pushed the victim. Thus, appellant's conviction for assault is not against the manifest weight of the evidence.
 {¶ 36} Accordingly, based upon the foregoing reasons, we overrule all of appellant's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[1] The statute provides that a person may not knowingly cause or attempt to cause physical harm to another when the offense occurs in or on the grounds of a state correctional facility and the victim is an employee of the Department of Rehabilitation and Correction. See R.C.2903.13(C)(2).
[2] The record does not contain any information as to the offenses appellant committed that led to his imprisonment. At the sentencing hearing, however, counsel for the state asserted that his prior convictions included aggravated murder, armed robbery, possession of a sawed-off shotgun, rape, abduction for immoral purposes, having a weapon while under a disability, aggravated robbery, and attempted murder.