DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of conviction and sentence of the Pickaway County Court of Common Pleas.
 STATEMENT OF THE CASE
In March 1998, Defendant-Appellant Michael Nutt was an inmate at the Correctional Reception Center in Orient, Ohio. Appellant was serving a felony sentence for a sexual battery conviction in Franklin County and was due to be released in October 1998. Lieutenant Tom Rees, a prison official at the Correctional Reception Center, received information that Tammy Nutt, the appellant's wife, was planning to smuggle drugs into the prison for the appellant. Lieutenant Rees contacted Trooper Michelle Scott of the Ohio State Highway Patrol to investigate the possible drug smuggling.
On March 5, 1998, Lieutenant Rees and Trooper Scott listened to an audio recording of a telephone conversation between the appellant and Mrs. Nutt, in which the appellant asked his wife if she was going to bring him anything the next time she visited him. Mrs. Nutt's answer was unintelligible, but Lieutenant Rees and Trooper Scott suspected that the appellant was asking her to bring him drugs. On March 6, 1998, Mrs. Nutt arrived at the Correctional Reception Center to visit the appellant. Trooper Scott and Lieutenant Rees confronted Mrs. Nutt and asked her if she was smuggling drugs into the facility. Mrs. Nutt admitted that she was smuggling drugs to the appellant and removed two marijuana cigarettes from her shoe.
Trooper Scott and Lieutenant Rees questioned the appellant about the marijuana cigarettes. Although the appellant initially refused to answer any questions, he later agreed to cooperate, hoping to obtain leniency for his wife. Appellant admitted that he had asked his wife to smuggle marijuana into the prison for him.
As a result of this incident, the parole board imposed a ninety-day bad time penalty on the appellant, to be served consecutive with his original sentence. The Pickaway County Grand Jury also indicted the appellant on one count of complicity to commit illegal conveyance of a drug of abuse onto the grounds of a detention facility, in violation of R.C. 2923.03 and 2921.36, a fifth-degree felony. Appellant moved the trial court to dismiss the indictment, claiming that the criminal prosecution following the imposition of a bad time penalty placed him in double jeopardy. Appellant also moved to suppress the statement he made to Trooper Scott and Lieutenant Rees. The trial court denied both of these motions. Thereafter, the appellant changed his plea from not guilty to no contest. The trial court found the appellant guilty and sentenced him to nine months in prison, to be served consecutive with his original sentence and consecutive with the additional ninety-day bad time period already imposed upon him by the parole board.
Appellant has completed his original sentence from Franklin County, as well as the ninety-day bad time period. He is currently serving the nine-month sentence imposed by the court below. Appellant filed a timely notice of appeal and raises two assignments of error for our review.
FIRST ASSIGNMENT OF ERROR:
 APPELLANT'S CONVICTION OF, AND SENTENCE FOR, COMPLICITY TO ILLEGAL CONVEYANCE OF DRUG [sic] OF ABUSE ONTO A DETENTION FACILITY VIOLATED THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, MADE APPLICABLE TO THE STATES THROUGH THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ANT) THE DOUBLE JEOPARDY CLAUSE OF SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED BY IMPOSING A CONSECUTIVE SENTENCE ON APPELLANT WITHOUT MAKING THE NECESSARY FINDINGS UNDER R.C. 2929.14(E)(4) ANT) R.C. 2929.19(B)(2)(c).
 OPINION I.
Appellant's First Assignment of Error claims that the imposition of bad time pursuant to R.C. 2967.11, followed by a separate criminal prosecution for the same offense, violates the Double Jeopardy Clauses of the Ohio and United States Constitutions. It should be noted that the appellant is not challenging the constitutionality of the bad time proceedings or the validity of the bad time sentence imposed against him. Rather, the appellant is challenging the state's right to both impose a bad time penalty against him and to bring a separate criminal prosecution against him for the same offense. For purposes of this appeal, we shall assume that the bad time penalty itself is constitutional. We shall limit our inquiry to a determination of whether the appellant's conviction in the court below violates Double Jeopardy principles.
The Fifth Amendment to the United States Constitution provides that no person shall "be subject to the same offense to be twice put in jeopardy of life or limb." Similarly, Section 10, ArticleI, Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." Historically, the Supreme Court of Ohio has treated the protections afforded by the Double Jeopardy Clauses of each Constitution as being coextensive. Statev. Gustafson (1996), 76 Ohio St.3d 425, 432, 668 N.E.2d 435, 441.
The prohibition against double jeopardy protects individuals from three types of abuses of the criminal justice system: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." Id. at 432,668 N.E.2d at 441. In the instant case, the appellant was not subjected to separate criminal prosecutions in courts-of-law for the same offense. The issue here is whether the appellant was improperly subjected to multiple punishments for the same offense.
The Double Jeopardy Clause does not bar imposition of multiple punishments in every situation. Trial courts often have the option of imposing both a fine and a prison sentence against a convicted criminal defendant, and there is no question that this practice is constitutional. See United States v. DiFrancesco
(1980), 449 U.S. 117, 139, 101 S.Ct. 426. However, in cases such as the present case, problems may well arise when the state attempts to impose a penalty against an individual through a civil or administrative proceeding and also brings criminal charges against that same person for the same conduct.
The United States Supreme Court has emphasized that the Double Jeopardy Clause only protects against multiple criminal
punishments, and then only if they are imposed in separate proceedings. Hudson v. United States (1997), 522 U.S. 93,118 S.Ct. 488. The issue in the instant case is whether a bad time penalty imposed pursuant to R.C. 2967.11 constitutes a criminal punishment that would bar a subsequent criminal prosecution based on the same conduct. We find that, under Hudson, we must apply a three-part test to analyze the appellant's double jeopardy argument. We must determine whether the state has subjected the appellant to (1) multiple criminal punishments; (2) in separate proceedings; (3) for the same offense. Hudson v. United States,522 U.S. at 99, 118 S.Ct. at 493.
 A. Criminal or Civil Punishments
Cases like Hudson typically involve a criminal prosecution coupled with some form of civil or administrative proceeding. The instant case is analogous to Hudson because the appellant received a ninety-day bad time penalty through an administrative proceeding prior to his criminal prosecution in a court of law. Normally, the key question in cases of this sort is whether or not an apparently civil remedy constitutes a criminal punishment. The defendants in Hudson, for example, were prosecuted for a series of fraudulent bank loans after the Office of the Comptroller of the Currency, acting on the same conduct, assessed fines against them and barred them from participating in the management of any banking institution.
When the issue is whether a given penalty is civil or criminal, courts must analyze the penalty under the seven-part test outlined in Kennedy v. Mendoza-Martimez (1963), 372 U.S. 144,83 S.Ct. 554. Hudson v. United States, 522 U.S. at 99,118 S.Ct. 493. The instant case is atypical, however, because it is clear that the additional period of incarceration imposed as the bad time penalty on the appellant was criminal in nature. Appellant's bad time penalty consisted of ninety days in prison over and above the appellant's original Franklin County sentence. We need not conduct a separate analysis of each element of the Kennedy
test because, unquestionably, incarceration in a state penitentiary is criminal punishment.
Appellee attempts to analogize bad time to a contempt proceeding, citing State v. Yacovella (Feb. 1, 1996), Cuyahoga App. No. 69487, unreported, for the proposition that a criminal contempt citation, coupled with a criminal prosecution for the same conduct, does not place the appellant in double jeopardy.Yacovella, however, involved a prosecution for non-support of dependants after a court had held the defendant in civil contempt for the same conduct. Civil contempt is meant to coerce future action. Since the contempt citation is purged if the contemnor complies with the court's order, the contemnor "carr[ies] the keys to his prison in his own pocket." Yacovella, quoting Brownv. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253,416 N.E.2d 610, 613. Bad time is more analogous to criminal contempt, which is a definite penalty imposed as punishment for the contemnor's past conduct. Contrary to the appellee's argument, the Yacovella
court expressly stated that double jeopardy applies to criminal contempt.
Appellee also cites a number of cases that permitted criminal prosecution of inmates who had already received disciplinary sanctions for crimes committed while in prison. See State v.Keller (1976), 52 Ohio App.2d 217, 369 N.E.2d 798; State v.Proctor (1977), 51 Ohio App.2d 151, 367 N.E.2d 908; State v.Vasquez (1997), 122 Ohio App.3d 692, 702 N.E.2d 923. We recently addressed this issue in State v. Thompson (Mar. 15, 1999), Scioto App. No. 98CA2600, unreported. There, we followed the analysis set forth in United States v. Ward (1980), 448 U.S. 242,100 S.Ct. 2636, and approved in Hudson, in holding that prison disciplinary control sanctions are civil penalties for purposes of a double jeopardy analysis.
Thompson and the other cases involving disciplinary proceedings within a prison are readily distinguishable from the case at bar. Inmates are subjected to prison disciplinary measures such as solitary confinement and revocation of privileges within the confines of a judicially imposed sentence, without adding days or months to the period of incarceration previously imposed by the sentencing court. Traditional prison disciplinary measures neither "work a major disruption in [the inmate's] environment," nor "affect the duration of [the inmate's] sentence." Sandin v.Connor (1995), 515 U.S. 472, 486-487, 115 S.Ct. 2293, 230 1-2302 (holding that Hawaii prison regulation governing disciplinary segregation does not afford inmate with a protected liberty interest). In contrast, bad time has a direct impact on the length of an inmate's prison sentence. Indeed, a bad time penalty is itself a period of actual incarceration that the inmate must serve in addition to, and consecutive with, his original sentence.
 B. Separate Proceedings
In the case sub judice, the appellant received a ninety-day bad time penalty from the parole board and a nine-month prison sentence from the common pleas court for his part in the attempt to smuggle two marijuana cigarettes into a state detention facility. Separate institutions, in different branches of government, conducted these proceedings at different times and imposed different penalties. Each penalizing institution employed different rules of procedure, as well as different standards of proof. Therefore, we find that the bad time proceeding against the appellant was entirely separate from his prosecution in the common pleas court.
 C. Same Offense. or Different Offenses
The critical issue in the instant case is whether the ninety-day bad time penalty and nine-month prison sentence imposed on the appellant were punishments for the same offense. Appellant argues that both penalties were imposed for the same crime, i.e., complicity to commit illegal conveyance of a drug of abuse onto the grounds of a detention facility, in violation of R.C. 2923.03 and 2921.36. In response, the appellee argues that, under R.C. 2967.11, the bad time penalty is imposed as part of the original sentence and not as a sentence for the new offense.
Ordinarily, the question of whether two criminal penalties are imposed for the same offense is answered by applying the test outlined in Blockburger v. United States (1932), 284 U.S. 299,52 S.Ct. 180. See State v. Tolbert (1991), 60 Ohio St.3d 89,573 N.E.2d 617, paragraph one of the syllabus. Under the Blockburger test, if each offense requires proof of an additional element that the other does not, then the offenses are separate and distinct. Again, the instant case is atypical because the parole board in the bad time proceeding and the common pleas court in the criminal prosecution both considered a complicity charge against the defendant that involved the same conduct and the same violation of state law.[1]
The major difficulty in the case at bar arises from the fact that R.C. 2967.11 declares that bad time is imposed as part of the inmate's original sentence. While the statute does not specifically authorize a criminal prosecution in addition to imposition of bad time, it is clear that the General Assembly intended to make both penalties available for the same offense. By declaring bad time to be part of the inmate's original sentence, it appears that the General Assembly was trying to avoid double jeopardy concerns. We are mindful that the General Assembly's enactments are entitled to a strong presumption of constitutionality. State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus. Whenever possible, we must interpret statutes as being consistent with constitutional pnnciples. We may not, however, simply defer to the judgment of the legislature on a matter of such great constitutional import.
We must determine whether bad time is truly part of the original sentence. If R.C. 2967.11, in substance, authorizes the imposition of a new penalty for a new offense, while formally declaring the new penalty to be part of the original sentence, then it has put form over substance; and we must reverse the appellant's conviction as a violation of Double Jeopardy principles. Two Ohio courts have ruled on the constitutionality of bad time. In State ex rel. Bray v. Russell (Nov. 9, 1998), Warren App. No. CA98-06-068, unreported, the Twelfth District Court of Appeals upheld the constitutionality of R.C. 2967.11, finding that imposition of bad time is functionally equivalent to revocation of good time. In White v. Konteh (Mar. 23, 1999), Trumbull App. No. 99-T-0020, unreported, the Eleventh District Court of Appeals strongly disagreed with the Bray court and held that R.C. 2967.11 is unconstitutional. The comparisons of good time and bad time conducted by these courts are instructive in analyzing the issue of whether or not a bad time penalty is part of the original sentence.
In Bray, the court first discussed the general operation of good time prison disciplinary schemes in Ohio and in other states, as well as the due process protections that the state must provide before restricting the right to earn good time credit. The Bray court found that imposition of bad time is the functional equivalent to revocation of good time since both of these actions extend the period that an inmate remains incarcerated.
The White court, in contrast, noted that the loss of good time merely required the inmate to serve a greater percentage of the sentence that was originally imposed by a court of law. Bad time, on the other hand, extends the inmate's period of incarceration beyond the term of the prison sentence imposed by the court. Moreover, the imposition of bad time requires the commission of a new criminal offense by the inmate. Therefore, the White court concluded that bad time resembles a criminal prosecution.
We find that the appellant's ninety-day bad time penalty was a new period of incarceration imposed as punishment for the complicity charge and not part of the appellant's original prison sentence. Although R.C. 2967.11 declares that bad time is part of the original sentence, the statute also states that the parole board may impose bad time as punishment for a "violation" committed by an inmate. Furthermore, the term "violation" is defined as any criminal offense under the laws of Ohio or of the United States. R.C. 2967.11(A). Thus, while R.C. 2967.11
attempts to formally make bad time part of the original sentence, the purpose behind imposing bad time is to punish new criminal conduct that occurs after imposition of the original sentence.
Our conclusion that bad time is a new penalty imposed for a new offense is supported by the report of the Ohio Criminal Sentencing Commission ("Sentencing Commission"). See A Plan forFelony Sentencing in Ohio: A Formal Report of the Ohio CriminalSentencing Commission (July 1, 1993), reproduced in Griffin 
Katz, Ohio Felony Sentencing Law (1998), p. 646, Appendix B. The Sentencing Commission noted that inmates received good time credit almost automatically and that good time had been ineffective as a prison disciplinary tool. Reasoning that inmates should be expected to follow prison rules, not rewarded for it, the Sentencing Commission recommended the bad time scheme as a method of punishing criminal conduct that occurs in prison. The Sentencing Commission assumed that typical bad time violations would be misdemeanor offenses. Therefore, it recommended imposing bad time in thirty, sixty, and ninety-day increments to mirror misdemeanor sentencing practices. The Sentencing Commission emphasized that nothing would prohibit criminal prosecution of more serious offenses as an alternative to imposition of bad time. By referring to criminal prosecution as an alternative to bad time, it appears that the Sentencing Commission contemplated imposition of one penalty or the other, but not both, for the same offense, especially for felony offenses.
In the case sub judice, the appellant has clearly been subjected to multiple criminal punishments, in separate proceedings, for the same offense. Therefore, we find that the appellant's conviction and sentence in the lower court for complicity to commit illegal conveyance of a drug of abuse onto the grounds of a detention facility is in violation of the Double Jeopardy Clauses of the Ohio and United States Constitutions. To the extent that, in practice, R.C. 2967.11 operates to permit both a criminal prosecution and the imposition of bad time for the same offense, we find that the statute violates the Double Jeopardy Clauses of the Ohio and United States Constitutions.
Accordingly, the appellant's First Assignment of Error is SUSTAINED. As a result of our ruling on the First Assignment of Error, the appellant's Second Assignment of Error is rendered moot.
 JUDGMENT REVERSED. DEFENDANT DISCHARGED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and that Defendant-Appellant Michael Nutt be DISCHARGED. It is further ordered that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, P.J.: Concur in Judgment Only.
For the Court
 BY: ____________________________ David T. Evans, Judge
[1] We denied the appellant's request for leave to supplement the record with documentary evidence from the bad time proceeding, because the appellant did not submit those documents to the trial court. At the change of plea and sentencing hearing, however, defense counsel, the prosecuting attorney, and even the trial judge were careful to place on the record the fact that the appellant had received a ninety-day bad time penalty stemming from a complicity charge that was the same as the charge before the trial court.