DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Sandusky County Court of Common Pleas which, following a jury trial, found appellant, Keith Nettles, guilty of escape. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant sets forth the following assignment of error:
"ASSIGNMENT OF ERROR
 "The appellant was denied effective assis tance of counsel, as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution."
The following facts are relevant to this appeal. On September 25, 1997, appellant was indicted on one count of escape in violation of R.C. 2921.34(A)(1)[1]. The escape charge resulted from appellant's fleeing from a police cruiser where he had been placed after he was arrested on August 2, 1997. An arrest warrant was issued on September 25, 1997. On June 10, 1999, the warrant was served and appellant was arraigned; appellant pled not guilty.
A jury trial was held on November 2 and 3, 1999. At trial, the arresting officer testified that in the early morning hours of August 2, 1997, he was the first of five officers to respond to a police dispatch regarding a fight at 513 Sandusky Avenue, Fremont, Ohio. When he arrived, he observed between thirty-five and fifty people either fighting or observing the fighting. He began to break up a fight and in the process pulled appellant from a group of fighting people. The officer testified that he knew appellant and knew that appellant had outstanding warrants; the officer also testified that he told appellant he was under arrest. The officer testified that a struggle ensued but that he eventually handcuffed appellant with appellant's hands in front rather than behind his body as is the custom. The officer testified that he went to place appellant in his police cruiser and then found that he had lost the keys to his vehicle. A captain arrived and the decision was made to place appellant in the captain's vehicle and for the captain to stay with appellant while the officer went back to the residence with the other officers. In contrast to an officer's vehicle, the captain's vehicle did not have a protective cage separating the driver from the passenger and had inside door handles in the back passenger area which would allow a passenger to open the back doors if inside.
The captain testified that while he was watching appellant, appellant told him that a woman at the party had a gun, pointing to where an officer was located. The captain testified that he radioed the officer but received no response. The captain decided to lock his vehicle's doors and find the other officer; the captain testified that the locked doors could not be opened from the outside, only from the inside. The captain testified that he was gone several minutes and when he returned he found the rear passenger door open and appellant gone. On cross-examination, the captain admitted that the crowd at the party was agitated. He also admitted that while he was looking for the other officer, he lost eye contact with his vehicle and could not say whether or not anybody went up to the vehicle.
Paul Fisher, a twenty-two year old man, testified that on the night in question he was driving past the location in Fremont after work at approximately one a.m. when he saw a black male with handcuffs on, in the back seat of a police vehicle with the door ajar, get out of the vehicle. This black male stated to Fisher "Take me somewhere" and "Let me in." Fisher sped off. Fisher testified that he did not see anyone else outside the police vehicle. The state rested.
Earl Jackson, appellant's cousin, ("Jackson") testified on his behalf. Jackson testified that he intended to go to the August 2, 1997 party with a friend but when they arrived there was a "ruckus" and they saw police cars. He testified that they stopped and looked. He also testified that he saw some men trying to get into a police car and trying to get a man out; he saw the man inside the back seat open the door, fighting the men off. Jackson testified that the man started to run with the other men chasing him. He testified that he has known appellant practically all his life. Jackson also testified that he did not know who was in the police car and did not recognize the individ uals trying to get into the police car. On cross-examination, Jackson testified that a man outside the police vehicle opened the door.
Appellant testified that he went to the party on August 2, 1997 with some friends; he testified that he got into an altercation with a man who had a gun which he was waving around. A fight broke out and appellant testified that during the fight, someone grabbed him from behind and appellant "flipped" the individual over appellant's back. Appellant testified that he stood over the individual and then saw that it was a police officer. Appellant denied that there was a struggle with the police officer and stated that the officer put the handcuffs on him without a struggle. Appellant testified that after he was placed in another officer's vehicle, that officer left him; appellant testified that two or three of the people he had been fighting came up to the vehicle he was in and opened the door. Appellant testified that he got out of the vehicle because he feared for his life. Appellant also testified that the following Monday he called his probation officer and was told no charges were filed against him. Appellant denied hearing the police officer say he was under arrest. On cross-examination, appellant testified that he was kicking at the men while they were trying to get him out of the police vehicle. On cross-examination, appellant admitted that his probation officer told him in early 1999 that appellant needed to come in and clear up the escape charge; appellant admitted that he never came in and was arrested on June 10, 1999.
The state presented three witnesses in rebuttal: appellant's probation officer; a police detective; and appel lant's girlfriend with whom he lived in August 1997. Appellant's probation officer testified that he spoke with appellant on two occasions when appellant telephoned him after the August 2, 1997 party: once in the fall of 1997 and again in late 1997 or early 1998. The probation officer testified that he told appellant that charges had been filed against appellant as a result of the August 2, 1997 incident. The probation officer testified that on one occasion appellant stated that appellant would turn himself into the probation officer the following week but appellant never did. The probation officer also testified that he called appel lant's girlfriend on several occasions to encourage appellant to turn himself in. The probation officer testified that he did not remember appellant telling him that people were attacking appellant while he was in the back of the police vehicle.
A police detective testified that appellant called him three or four times following the August 2, 1997 incident, starting in early 1998. The police detective testified that he discussed with appellant that he was a fugitive for whom an arrest warrant on escape had been issued.
Appellant's girlfriend with whom he lived during August 1997 was subpoenaed and testified that she saw him with handcuffs on in front and with his shirt ripped. The girlfriend testified that she placed a call to appellant's attorney to inquire about possible charges from the August 2, 1997 party.
After the state rested following rebuttal, appellant made a Crim.R. 29 motion for acquittal which was denied by the trial court. Following deliberations, the jury found appellant guilty of the escape charge. Appellant was sentenced on January 19, 2000. Counsel was appointed for appeal. Appellant filed a timely notice of appeal.
In his assignment of error, appellant argues that his trial counsel rendered ineffective assistance and that, there fore, appellant was denied his constitutionally guaranteed rights. Specifically, appellant argues that his trial counsel rendered ineffective assistance because he was not aware of the proper jury instruction concerning the defense of necessity or duress to an escape charge and that his trial counsel failed to object to the characterization of the area where the August 2, 1997 party occurred as a "drug area" and even characterized the area that way himself. This court finds no merit in this assign ment of error.
The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under theSixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v. Washington (1984),466 U.S. 668, 686-687. If appellant fails to establish either component, he is not entitled to relief. It is not necessary to consider the components in a particular order. If appellant fails to establish a reasonable probability of prejudice, there is no need to consider whether counsel's performance fell below the standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136,143, certiorari denied, 497 U.S. 1011 (1990). Strickland,466 U.S. at 693.
Effective assistance of counsel does not guarantee results. State v. Longo (1982), 4 Ohio App.3d 136. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v.Hart (1988), 57 Ohio App.3d 4, 10. It is well established that the constitution does not guarantee a perfect trial or even the best available defense. The Sixth Amendment guaran tee of effective assistance of counsel requires only that defense counsel perform at least as well as an attorney with ordinary training and skill in criminal law. State v. Martens, 90 Ohio App.3d 338, 351.
In regard to the crime with which appellant was charged, the Ohio Supreme Court stated in State v. Cross (1979), 58 Ohio St.2d 478,487-488:
 "One of the essential features of a necessity or duress defense is the sense of present, imminent, immediate and impending death, or serious bodily injury. (Citations omitted.) * * *
" * * *
 "The coup de grace is the fact that appellant failed to turn himself in immediately after fleeing the supposed intolerable conditions. This makes it very clear what the defendant's intentions were and that he purposely escaped to flee the system and for no other reason. He fled to Mexico and only after three weeks did he turn himself in to California authori ties. If an affirmative defense can be raised to an escape charge, this is certainly not the case to raise it. Here, appellant saw a chance to escape and did so, and he only turned himself in because he realized he had `done wrong' and wanted to `get this mess straightened up.' As a matter of law, we find that the defendant failed to produce evidence of a nature and quality sufficient to raise his defense. (Emphasis added.)
See, also, State v. Procter (1977), 51 Ohio App.2d 151, 159, (" * * * a number of authorities have * * * limited the defense by a requirement that a prisoner be required to surrender himself to the authorities as soon as he has avoided the threatened harm.")
The standard in regard to conflicting evidence is as follows:
 "Where the evidence at trial is conflicting, the determination of what occurred is a ques tion for the trier of fact and an appellate court may not, in reviewing that decision, substitute its judgment for that of the fact finder." State v. Wise (Jan. 29, 1993), Wood App. No. 91WD113, unreported. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492."
Applying the above legal standards to the facts in the case at bar, this court will examine whether appellant has established a reasonable probability of prejudice. Appellant suggests that, but for counsel's failures, the outcome of the trial would have been different. Even if a defendant shows that particular errors of counsel were unreasonable, the defendant must still establish that such errors actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings. If this were the case, virtually every act or omission of counsel would meet that test, and every error that conceivably could have influenced the outcome would be considered to undermine the reliability of the results of the proceedings.
In the case sub judice, assuming arguendo, that counsel erred in regard to the jury instruction or in failing to object to the characterization of the area where the party occurred as a "drug area," appellant was not rendered ineffective assistance of counsel as it is not possible for appellant to show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A review of the facts show that there was overwhelming evidence of the appellant's guilt.
The testimony of the arresting officer was that he told appellant he was under arrest before he was placed in the police vehicle; the captain was clear that he locked his vehicle's doors and that they could only be opened from the inside. Furthermore, Paul Fisher testified that he saw a black male with handcuffs on, in the back seat of a police vehicle with the door ajar, get out of the vehicle. Fisher also testified that he did not see anyone else outside the police vehicle and that the black male stated to him "Take me somewhere" and "Let me in."
However, the most damaging evidence was the testimony of both appellant's probation officer and a detective that they told appellant of the pending escape charge and urged him to turn himself in the fall of 1997 and early spring of 1998, respec tively. Despite this advice, appellant did not turn himself in but was arrested on the escape charge on June 10, 1999, almost two years after the August 2, 1997 incident.
Thus, pursuant to State v. Cross, 58 Ohio St.2d at 488
and State v. Procter, 51 Ohio App.2d at 159, appellant did not comply with the duress defense requirement to surrender himself to authorities as soon as he avoided the threatened harm. Considering the overwhelming evidence against appellant at his trial, it is unlikely that, absent trial counsel's asserted errors, a more favorable outcome on an escape charge would have resulted.
Accordingly, appellant's assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
 ______________________ HANDWORK, J.
 Melvin L. Resnick, J., Mark L. Pietrykowski, J., JUDGES CONCUR.
[1] R.C. 2921.34(A)(1) provides:
 "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement." (Emphasis added.)