This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Lori Jones, appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of five of her minor children, to the Summit County Children's Services Board ("CSB"). We affirm.
 I.
Lori and Dewey Jones are the parents of six children. The oldest child is legally independent and not a party to this action. The parental rights to the five remaining minor children, B.J., born September 25, 1986; A.J., born January 3, 1988; R.J., born November 23, 1990; Z.J., born November 1, 1991; and C.J., born June 19, 1993, constitute the subject of this appeal. The father participated in the proceedings below, but is not a party to this appeal. Mr. Jones was convicted of murder in 1994 and has been incarcerated since that time. Sometime in 1995, one John Barker moved into the home as the paramour of Ms. Jones. On May 31, 2000, the five minor children were taken into the emergency temporary custody of CSB based on allegations of sexual and physical abuse.
As a result of these allegations, Mr. Barker was charged with numerous counts of rape, gross sexual imposition and the illegal use of a minor in nudity-oriented material. Mr. Barker pled guilty to one count of rape, two counts of gross sexual imposition, and two counts of using a juvenile in nudity-oriented material. He was sentenced to life imprisonment. Ms. Jones was charged with two counts of felony child endangering and two counts of conspiracy to commit gross sexual imposition. She pled guilty to one count of child endangering and the remaining counts were dismissed.
On June 1, 2000, CSB filed sworn complaints, alleging that all five minor children were neglected and dependent. In addition, the two girls, B.J. and A.J., were alleged to be abused and endangered. The juvenile court continued emergency temporary custody in CSB.
On September 13, 2000, B.J. and A.J. were adjudicated to be abused and neglected children and C.J., R.J., and Z.J. were adjudicated to be dependent children. The dispositional hearing followed, at which time the court ordered the children committed to the temporary custody of CSB. Ms. Jones appealed that judgment to this court, which affirmed the judgment of the juvenile court. See In re Jones (May 2, 2001), Summit App. No. 20306, unreported. A case plan was developed and implemented. Periodic review hearings were held.
Ultimately, on April 27, 2001, CSB filed a motion for permanent custody of the children. Following a hearing on the motion, the juvenile court terminated the parental rights of Ms. Jones and Mr. Jones and granted permanent custody of the children to CSB.
 II
Ms. Jones timely appealed to this court and has assigned eight errors for review. First, we will discuss the second, third, fourth, fifth, and seventh assignments of error together. We will then consider the second, sixth, and eighth assignments of error, separately and in that order.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN ITS DISCRETION TO AWARD PERMANENT CUSTODY OF THE CHILDREN AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED IN ITS DISCRETION TO AWARD PERMANENT CUSTODY OF THE CHILDREN AS THERE WAS NOT SUFFICIENT EVIDENCE TO SUPPORT THE DECISION.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ABUSED ITS DISCRETION IN IGNORING OR FAILING TO FOLLOW THE STATUTORY REQUIREMENTS IN THE CONSIDERATION OF THE MOTION OF PERMANENT CUSTODY FILED BY CHILDREN SERVICES BOARD.
 ASSIGNMENT OF ERROR V CHILDREN SERVICES BOARD DID NOT USE REASONABLE AND DILIGENT EFFORTS TO REUNIFY THE FAMILY.
 ASSIGNMENT OF ERROR VII THE TRIAL COURT ERRED BY GRANTING CHILDREN SERVICES BOARD'S MOTION FOR PERMANENT CUSTODY AS PERMANENT CUSTODY WAS NOT IN THE CHILDREN'S BEST INTEREST.
Through these assignments of error, Ms. Jones essentially contends that the evidence presented below does not satisfy the statutory and evidentiary requirements for termination of parental rights. Specifically, she challenges the finding of the juvenile court that it was in the children's best interest to award permanent custody to CSB and contends that CSB failed to use reasonable and diligent efforts to reunify the family. In addition, she argues that the decision was against the weight of the evidence as well as being unsupported by sufficient evidence. Because these claims involve related issues, they will be considered together.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten
(1986), 33 Ohio App.3d 339, 340. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court]." Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Karches,38 Ohio St.3d at 19. Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
The termination of parental rights is governed by R.C. 2151.414. Before a juvenile court may terminate parental rights with regard to a child who is neither abandoned nor orphaned, it must apply a two-prong test and find by clear and convincing evidence that: (1) it is in the best interest of the child to be placed in the permanent custody of the petitioning agency, based on an analysis under R.C. 2151.414(D), and (2) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E). See R.C. 2151.414(B); see, also, In re WilliamS. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will produce in the trier of fact `"a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
Evidence was presented at the hearing on the motion for permanent custody through counselors, therapists, social workers, Ms. Jones, her oldest son, and Mr. Jones's mother. The guardian ad litem also reported to the court. The record establishes that the family has had a lengthy history of problems and involvement with CSB. In 1987, a family member made a referral because the children were abandoned for five days. In 1991, both parents were arrested for aggravated drug trafficking and the children were placed in temporary custody for approximately a year. In 1994, both parents were charged with aggravated murder, aggravated robbery, and kidnapping, and the children were again placed in the temporary custody of CSB. Ms. Jones was apparently cleared of the charges, but Mr. Jones was convicted and has been in prison since that time.
There is a history of drug abuse by both parents. Ms. Jones reported that her husband had been "in and out of jail" for selling drugs. Ms. Jones admits to having used marijuana, heroin, morphine, speed, cocaine, and crack cocaine in the past, and has a conviction for drug trafficking. Her recent urine screens, however, have all been negative except for prescription drugs, which include pain medication.
As to the children, the evidence reveals that B.J. has been sexually abused, displays nervous behaviors, makes poor choices, and has been diagnosed as having post traumatic stress disorder. B.J. has displayed violent behaviors in her foster homes and has been a frequent runaway. She is often "out on the street," is sexually involved and uses drugs and alcohol.
A.J. has been sexually abused and displays inappropriate and oppositional behaviors. She defies authority, needs to be held accountable, and needs structure and stability in her life. She has been in a detention home and is now in a structured, therapeutic foster home with weekly counseling. She attends school regularly. Both B.J. and A.J. ran away immediately after a family session and have stated that they want to be with their mother.
R.J. disrupted from his first foster home, but upon transfer has responded well to his present structured home environment. He has displayed aggressive behavior and has been diagnosed with an adjustment disorder with a mixed disturbance of emotional conduct. After visiting with his siblings, he was very defiant with his foster parents and acted out in an oppositional way. He is now in a therapeutic foster home. R.J. has indicated to his therapist that he would like to be in a permanent home, though not necessarily with his mother.
Z.J. had been physically abused, displays disruptive and violent behaviors, has a problem accepting rules and has been diagnosed with attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder. He has been prescribed medications for mood, behavior, and ADHD. He has been moved to a respite home because of acting out sexually against other foster children. He needs to be in a safe, stable environment with therapeutic counseling.
Z.J. was only recently able to talk about the abuse he suffered. The child reported that Mr. Barker: (1) put a rope around his neck and made him stand on a bucket, (2) burnt his face with a cigarette, (3) put his face and his sister's next to a stereo and turned up the volume, (4) made him and his sister strip to their underwear and threw cold water on them with the fan on, (5) shocked him with electric wire, (6) beat him with a switch from a willow tree, and (7) hit him in the head with his fists. The child also reported that he witnessed Mr. Barker spit on his sister and pull her hair, pull his mother's hair, and threaten to kill his sister's boyfriend. As to sexual abuse, Mr. Barker forced Z.J. to perform oral sex on him, hit him in the groin with his hand, "humped" him from behind, fondled him while he had no clothes on, and was made to look at pictures of Mr. Barker having sex with his sister. Z.J. also saw a "dirty movie" of Mr. Barker's and saw B.J. get into bed with Mr. Barker, saw him grab her breasts, and heard B.J. say stop. Finally, Z.J. reported that he was told he would be killed if he disclosed any of this.
Z.J.'s counselor indicated concern that the child showed no emotion while reporting his stories about the abuse. Z.J. is reported to be a confused, fearful, angry, and guilty child. He is presently in a therapeutic foster home because of his physically and verbally threatening and disruptive behavior. He continues in counseling. Z.J. needs a home that is safe, stable, consistent, pro-social, loving and nurturing where his needs are met.
C.J.'s therapist reported that he suffered physical, mental, and emotional abuse. Mr. Barker would make fun of him, make him stand in corners for long periods of time, make him kneel on rice, hit and kick him, and make him eat things such as fingernails in his cereal. After family sessions, the foster mother reported drastic changes in C.J.'s behavior. He would be oppositional at home and create behavior problems in school. He also complained of stomach aches and headaches. His behavior at school was so bad on one occasion that the sheriff and paramedics were called to remove him to Children's Hospital for evaluation. C.J. is placed in a very experienced foster home and has been transferred to county counseling.
Evidence was offered that Ms. Jones was present and aware of at least some of the abuse of the children, inappropriate behavior, and illicit drug use. C.J. reported to the CSB caseworker that Ms. Jones was in the house during the abuse. A.J. and B.J. each reported to the caseworker that they were with their mother while using marijuana. A neighbor testified that she was present when a pornographic movie was shown by Mr. Barker and Ms. Jones to the children. The guardian ad litem indicated that the children told her that Ms. Jones was afraid of Mr. Barker.
CSB presented evidence indicating that when the children were together at group sessions, the atmosphere was chaotic and became very confrontational, with profane language and threats directed at the facilitator. The family did not respond to re-direction. The children did not interact as siblings in a positive way. The children directed abuse towards the facilitator and reported to each other about trouble they were causing in their respective placements. On one occasion, Ms. Jones added to the confusion by telling the children that they would be returned home when there was no such plan and she was specifically directed not to tell the children that. There was evidence that the family sessions were disruptive to the children and the sessions were discontinued until the children and Ms. Jones made more progress in their respective counseling sessions.
Most of the children have, at least on occasion, stated that they wished to return home, though Z.J. stated that he did not wish to do so yet, and R.J. just wants a permanent home. A caseworker explained that most children have a bond with their parents, but none of the counselors, therapists, or caseworkers who testified at the hearing recommended that the children be returned home to the mother. In addition, the children's guardian ad litem recommended that the children be placed in the permanent custody of CSB.
Karen Annis, a CSB caseworker, reported that each child is in counseling and three are in therapeutic homes. Ms. Annis stated that Ms. Jones did not appear to understand what caused the behaviors of the children, have any insight into their behavior, or understand what CSB's concerns were regarding their behaviors. Ms. Annis was concerned with Ms. Jones's ability to understand what her children had experienced during the years of physical and sexual abuse, how that affected their behavior and how those behaviors would need to be addressed in the future. She was particularly concerned with the fact that Ms. Jones had not been able to recognize over a long period of time that her children were in distress and were being abused, and that she still does not recognize the seriousness of the behaviors that have resulted from that abuse.
Mandy Slagle, another CSB caseworker, testified that since the children have come into care, they have required numerous placement changes, being moved from relative placements or foster homes, to different foster homes, the receiving unit, respite care, the detention home, and therapeutic foster homes. The children have exhibited numerous behavior problems, including disruptive and violent behavior, running away, and sexually acting-out. She stated that there were no supervised visits early on because the children were not making progress in their foster homes or counseling. She believed that adding visits with Ms. Jones would not have helped the children. She also did not believe it would be safe for the children to be returned to their mother's custody and expressed concern regarding supervision issues and the long-term effects of prescriptive medications on the mother.
Donald Kissenger, a licensed professional clinical counselor from the Northeast Ohio Behavioral Health Center, performed a sexual offender evaluation of Ms. Jones. He diagnosed Ms. Jones as having a mild depression and a pattern of denial of responsibility or accountability for the abuse of her children. He explained that CSB had been called out to the home so often, that the mother should have been aware of the abuse. There were allegations made against Mr. Barker on numerous occasions that he sexually and physically abused the children and she did not do anything about that. He stated that Ms. Jones did not feel there was a problem — but that she should have. Hundreds of inappropriate pictures and several videos of the children with Mr. Barker were found in the house. Some of the pictures were found in the clothes closet used by Ms. Jones and others were found in her car. Some of the children went outside the home to report the abuse, instead of going to their mother. Ms. Jones broke a no-contact order to speak with A.J. and this led Mr. Kissenger to believe that the children may have been threatened in the past when previous allegations were made. Mr. Kissenger stated that the sexual offender program would have helped Ms. Jones deal with the problems in her household that she either participated in or allowed.
Rebecca Mason was Ms. Jones's substance abuse counselor at the Community Health Center. She testified that Ms. Jones was defensive and hostile about being in counseling and felt it was not necessary. Ms. Jones was said to display little interest in taking responsibility for her own actions. Her attendance at the 12-step program was sporadic. While she attended some meetings, her application of the concepts was minimal. She stated that she believes Ms. Jones is at a moderately high risk to return to the use of illegal drugs based on her continued use of pain medications and a lack of positive support.
Ms. Jones testifed in her own behalf. She stated that she worked 60 hours a week, six days a week, from mid-afternoon until late night or early morning at Arby's. While she worked, she left the children in Mr. Barker's care. She stated that she was not aware that Mr. Barker physically or sexually abused her children, nor was she aware of him taking inappropriate photographs of the children. She denied possession of such pictures or that she herself took sexually-oriented photographs of the children. She denied watching pornographic movies with Mr. Barker. She admits to using drugs in the past, but denies any illicit drug use since 1995. She stated that she is in the process of buying a house, has taken four sets of parenting classes for dealing with children of different age groups, and is an active member of Alcoholics Anonymous. She has left urine screens twice a week. She did not attend a sexual offender program because her prior attorney said she was not a sexual offender and, therefore, did not have to attend such a program. She stated that she attended substance abuse counseling sessions. She listed a support system that included her mother, sister, grandmother, aunt, neighbors, bosses, and counselor and her A.A. sponsor. She maintains that she did nothing wrong to the children, will keep them in counseling and promises that she will not have another male in the house. She also stated that she would "enter anything and everything."
In determining what is in the best interests of the child under R.C.2151.414(D), the court should consider all relevant factors, including, but not limited to, the following statutory factors:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency [.]
The juvenile court found that it was in the best interest of the children that they be placed in the permanent custody of CSB. Upon review, we find significant evidence in support of that judgment. The juvenile court did not err in finding that it was in the best interest of the children to place them in the permanent custody of CSB. Furthermore, the record indicates that each of the above factors weighed in favor of termination.
In considering whether the children can or should be placed with a parent within a reasonable time, the court is to consider all relevant evidence. R.C. 2151.414(E). R.C. 2151.414(E) also contains eight separate factors, the presence of any one of which requires the court, upon a finding by clear and convincing evidence that the factor is present or occurred in the case, to enter a finding that the child cannot or should not be placed with a parent within a reasonable time.
In this case, the juvenile court did find that the children cannot and should not be placed with either parent within a reasonable time. That finding is mandated by the determination that Ms. Jones was convicted of child endangering in violation of R.C. 2919.22(A). See R.C. 2151.414(E)(6). The court also found that notwithstanding reasonable case planning and diligent efforts, Ms. Jones failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside their home. The court specifically pointed to Ms. Jones's failure to utilize social and rehabilitative services made available to her, namely counseling and a sexual offender treatment program, and her conviction for endangering children.
Ms. Jones does not directly dispute the finding that the children cannot or should not be placed with a parent within a reasonable time. Instead, she contends that CSB has not made reasonable and diligent efforts to reunify the family. The statute does not impose this requirement. Rather, one of the optional factors of R.C. 2151.414(E) indicates that if the agency conducts "reasonable case planning and diligent efforts" to assist the parents in resolving the conditions which caused the initial removal of the children and the parents fail to substantially remedy those conditions, then the court is required to find that the child cannot be placed with the parents within a reasonable time. R.C. 2151.414(E)(1). The statute does not require CSB to "use reasonable and diligent efforts to reunify the family" in all cases. Because the finding of the trial court that the children cannot and should not be placed with either parent within a reasonable time has an alternate basis pursuant to R.C. 2151.414(E)(6), it is not necessary for this court to consider the application of R.C. 2151.414(E)(1).
In concluding that the children should be placed in the permanent custody of CSB, the juvenile court gave consideration to evidence of Ms. Jones's "extensive past involvement with the criminal justice system," her failure to recognize Mr. Barker as a threat to her children and her willingness to introduce him into their lives, her failure to remove Mr. Barker from the lives of her children after she knew or had reason to suspect that he might have been physically abusive and/or sexually inappropriate with the children, her failure to seek recommended counseling to address her poor decision making skills and inappropriate behaviors, her failure to participate in a sexual offender treatment program in which she would learn to identify and deal with the problems in her home that led to the sexual abuse of her children and sexually inappropriate behaviors in her home, and concerns as to whether Ms. Jones is capable of providing the children with a legally secure placement which would ensure that the children receive the ongoing therapy they need.
Upon review, this court finds that the juvenile court did not err in concluding that it was in the best interest of the children to be placed in the permanent custody of CSB and that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. Furthermore, the judgment of the juvenile court is supported by the weight of the evidence. A determination that a finding is not contrary to the manifest weight of the evidence will also be dispositive of the issue of sufficiency. See Bowen v. Bowen (1999),132 Ohio App.3d 616, 638. Accordingly, the second, third, fourth, fifth, and seventh assignments of error are overruled
 ASSIGNMENT OF ERROR I DOUBLE JEOPARDY: LORI JONES' RIGHT NOT TO BE PUT IN PERIL TWICE FOR THE SAME OFFENSE AS GUARANTEED BY THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION WAS VIOLATED WHEN HER PARENTAL RIGHTS AND RESPONSIBILITIES WERE TERMINATED BECAUSE OF HER PREVIOUS GUILTY PLEA TO CHILD ENDANGERING, [R.C. 2919.22(A)].
In her first assignment of error, Ms. Jones argues that the termination of her parental rights was based on her prior conviction for child endangering and, therefore, violated the Double Jeopardy Clauses of theFifth Amendment to the United States Constitution and Section 10, ArticleI, of the Ohio Constitution. Ms. Jones asserts that the termination of her parental rights constitutes a punishment for noncompliance with the case plan, specifically for her failure to attend a sexual offender program. This is so, she reasons, because the granting of CSB's motion for permanent custody was "significantly based" on appellant's previous plea of guilty to child endangering and the dismissed charges of gross sexual imposition. We find the argument to be without merit.
The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "for the same offense [be] twice put in jeopardy of life or limb." The Fifth Amendment to the United States Constitution is made applicable to the states through theFourteenth Amendment. Benton v. Maryland (1969), 395 U.S. 784, 794,23 L.Ed.2d 707, 716; State v. Tolbert (1991), 60 Ohio St.3d 89, 90. Similarly, Section 10, Article 1 of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." "Ohio courts have historically treated the protections afforded by the Double Jeopardy Clauses of the Ohio Constitution and the United States Constitution as coextensive." State v. Gustafson (1996), 76 Ohio St.3d 425,432.
The Double Jeopardy Clauses of the each constitution will prohibit subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense. United States v.Halper (1989), 490 U.S. 435, 440, 104 L.Ed.2d 487, 496; State v. Vasquez
(1997), 122 Ohio App.3d 692, 694. In analyzing an alleged double jeopardy violation based on multiple punishments for the same offense, "[t]he threshhold question * * * is whether the government's conduct involves criminal punishment." State v. Williams (2000), 88 Ohio St.3d 513,528. Accordingly, we must determine whether the decision to grant permanent custody to CSB based, in part, on Ms. Jones's prior conviction for child endangering constituted a punishment for purposes of double jeopardy. In In re Creel (Sept. 20, 2000), Summit App. Nos. 20066 
20074, unreported, this court considered a similar question. In that case, the appellant argued that an award of permanent custody to an agency, based in part on his prior conviction for attempted rape, constituted a multiple punishment for the same offense and therefore violated the principles of double jeopardy. Id. at 25. This court held that the award of permanent custody to the agency was not in the nature of a criminal penalty for the appellant's prior conviction, but instead was based on the general welfare of the child and the appellant's ability to properly care for him. The court observed that one of the purposes of Chapter 2151 of the Revised Code is to "`provide for the care, protection, and mental and physical development of children.'" Id. at 25-26, quoting R.C. 2151.01(A)
So, too, in this case is the award of permanent custody based on the general welfare of the children and Ms. Jones's ability to properly care for them. Additionally, as in Creel, Ms. Jones's parental rights were not terminated by the juvenile court solely on the basis of a concurrent criminal conviction for child endangering, but, rather, for multiple reasons, several of which were identified by the court in its opinion as being significant. Furthermore, the Double Jeopardy Clause precludes successive criminal prosecutions. Gustafson, 76 Ohio St.3d at 435. An action involving the termination of parental rights is not a criminal proceeding. The fact that Ms. Jones had a concurrent criminal conviction for which she received a criminal penalty does not in any way diminish the civil responsibility of the court to insure a safe and secure environment for her children.
Ms. Jones also argues that while granting permanent custody to an agency is generally considered to be remedial in nature, "sanctions which may initially be determined as remedial can simply go too far, to the point that they may be deemed `punishment' for double jeopardy purposes."Gustafson, 76 Ohio St.3d at 440. She suggests that this is the case here, apparently arguing that a lack of evidence that she herself sexually abused the children makes the requirement to attend a sexual offender program a punishment.
The argument fails for three reasons. First, the juvenile court found in its opinion that the sexual offender treatment program is designed not only for those who actually sexually offend, but is also designed to benefit individuals such as Ms. Jones, who need to learn to identify and deal with problems that led to the sexual abuse of her children and sexually inappropriate behaviors by her paramour. Apparently — and reasonably — the juvenile court found that promises by Ms. Jones to never have another man in her home are simply not sufficient to guarantee the safety of the children.
Second, there was, in fact, evidence before the court below that Ms. Jones knew or should have known of the abuse of her children and inappropriate conduct in regard to them. She should have intervened and failed to do so. Thus, if Ms. Jones was aware of the conduct of Mr. Barker, then she could have benefited from this type of program. If, on the other hand, she was not aware of his conduct, she still could have benefited from the program. Ms. Jones was either culpable or naíve. In either case, the program was properly commended to her.
Third, Ms. Jones has presented no authority to this court supporting her contention that attending a sexual offender program is a punishment for purposes of double jeopardy. The mere fact that Ms. Jones disputes the necessity of attending a sexual offender program does not convert a remedial action into a punishment.
Consequently, we find that the decision of the juvenile court to terminate Ms. Jones's parental rights does not constitute punishment for double jeopardy purposes, and does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. Ms. Jones's first assignment of error is overruled.
 ASSIGNMENT OF ERROR VI APPELLANT SUBSTANTIALLY COMPLIED WITH HER CASE PLAN REQUIREMENTS AND THEREFORE A GRANT OF PERMANENT CUSTODY WAS CONTRARY TO LAW.
Ms. Jones contends that the granting of permanent custody to CSB was erroneous because she substantially complied with her case plan. The argument is without merit for two reasons. First, substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. In re Watkins v. Harris
(Aug. 30, 1995), Summit App. No. 17068, unreported, at 9. The termination of parental rights is governed by R.C. 2151.414 and the standards set forth therein. That statute does not mandate such a result.
Second, the dispositive issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal. See, e.g., In re McKenzie (Oct. 18, 1995), Wayne App. No. 95CA0015, unreported, at 7-8. This issue is relevant to the circumstances listed in R.C. 2151.414(E)(1) which, if found to exist, eliminates the court's discretion to conclude that the children can be placed with either of their parents.
In the present case, the case plan included two basic concerns that related specifically to Ms. Jones. First, because of her history of abusing drugs, she was to have a drug assessment, provide random urine tests, and participate in counseling for substance abuse. Second, she was to understand and identify her role and how she impacted the victimization of her children. Ms. Jones was to increase her understanding of the dynamics of sexual abuse and the impact of such abuse on the individual members of the family, as well as the family as a whole. In that regard she was to attend parenting classes, obtain a sex offender assessment, a psychological assessment, and participate in all recommended activities. The assessments resulted in a recommendation that she attend a sex offender program, have a parenting assessment, and participate in counseling directed towards improving her decision making and inappropriate behaviors.
Ms. Jones seeks to excuse her lack of compliance in two areas: the failure to participate in the sexual offender's program and failure to attend counseling sessions recommended as a result of the psychological assessment.
First, Ms. Jones claims she did not need to attend the sexual offender program because she did not sexually offend. As discussed above, this argument is without merit. Ms. Jones was given an opportunity to participate in treatment programs in order to understand and deal with the repercussions the abusive treatment had had upon her children and to learn how to prevent such abuse from occurring in the future. She refused to participate in the sexual offender's treatment program and now claims that the program recommended to her was too expensive and too long. There is nothing in the record to suggest that she attempted to substitute a shorter or less costly program addressing similar issues. She simply refused to attend for a reason that does not resolve the concerns of the juvenile court in this matter. The program was an appropriate and reasonable requirement in light of the facts of this case, and the juvenile court was entitled to consider Ms. Jones's refusal to comply with the requirement in making its decision.
Second, Ms. Jones also claims that she sufficiently complied with her case plan by attending substance abuse counseling and the 12-step program of A.A. instead of counseling to address her poor decision making skills and inappropriate behaviors. This recommendation would seem designed to focus upon different needs than those addressed by a drug counselor. Ms. Jones's failure to address her decision making and parenting behaviors could properly be considered by the juvenile court as relevant to the issues before it.
For these reasons, the sixth assignment of error is without merit.
 ASSIGNMENT OF ERROR VIII WHETHER CHILDREN SERVICES BOARD VIOLATED APPELLANT'S FIFTH AMENDMENT RIGHT BY SEEKING PERMANENT CUSTODY OF THE CHILDREN BECAUSE SHE REFUSED TO ATTEND AN EXPENSIVE SEXUAL PREDATOR PROGRAM WHEN THERE WAS NO OBJECTIVE EVIDENCE THAT SHE WAS A SEXUAL PREDATOR.
Ms. Jones contends that compelling her to attend a sexual predator program constitutes an admission that she has sexually abused her children and, therefore, is a violation of the Fifth Amendment to the United States Constitution. The argument is without merit.
Admissions are, by definition, voluntary. If Ms. Jones was required by the court-adopted case plan to attend a sexual offender program, her attendance could not be considered an admission. In addition, the juvenile court stated in its opinion that even though Ms. Jones was not convicted of any sex-related crime stemming from the facts of this case, she would benefit by learning to identify and deal with the problems in her home, including the rape of her daughters.[1]
Furthermore, the juvenile court had before it evidence that Ms. Jones was aware of behavior by Mr. Barker that should have been considered sexually inappropriate and evidence that Ms. Jones herself participated in inappropriate behavior with her children. The juvenile court found that Ms. Jones was aware of Mr. Barker exposing himself to the children during a game of "truth or dare" and that Ms. Jones and Mr. Barker watched a pornographic video with the children.
Thus, there was evidence before the juvenile court from which it could conclude that Ms. Jones had reason for concern, but failed to address the problem. Furthermore, while Ms. Jones' failure to attend this program was a significant factor in the conclusion reached by the juvenile court, it was not the sole factor. Absent Ms. Jones's failure to attend this program, there was still sufficient evidence in the record upon which the juvenile court could properly conclude that permanent custody of the children should be granted to CSB.
The eighth assignment of error is without merit.
 III.
Each of the errors asserted by Ms. Jones is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
BAIRD, P.J., WHITMORE, J. CONCUR.
[1] Ms. Jones attached a copy of a brochure from the program suggested by Mr. Kissenger to her brief in this court. While the document is not properly a part of the record in this matter, it is instructive to observe that the program is addressed to individuals whose lives are impacted by exploitation and/or family abuse, including treatment for victims of abuse.